# EXHIBIT A

# INTERIM DIP ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re

NATIONAL EVENTS HOLDINGS, LLC, *et al.*,[1]

         Debtors.

--------------------------------------------------------x

Chapter 11

Case No. _____

(Jointly Administered)

### INTERIM ORDER: (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) USE CASH COLLATERAL OF PREPETITION SECURED PARTIES AND (D) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (III) GRANTING RELATED RELIEF

This matter is before this Court (the "Bankruptcy Court") on the motion dated June 5, 2017 (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors", and each, individually, "Debtor") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), for entry of an interim order (this "Interim Order") and a final order (the "Final Order"), under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), seeking, among other things:

---

[1] The last four numbers of each Debtor's taxpayer identification number are National Events Holdings, LLC (7314); National Events Intermediate, LLC (0566); National Event Company II, LLC (6663); National Event Company III, LLC (7592); and World Events Group II, LLC (9429). The Debtors' address is 1430 Broadway, 7th Floor, New York, New York 10018.

(1) authorization for the Debtors to (A) obtain postpetition secured debtor in possession financing in an aggregate principal amount of up to $485,000 (the "Maximum Amount") (of which (x) up to $250,000 (the "Maximum Interim Amount") shall be available to the Debtors upon entry of this Interim Order and the satisfaction or waiver of the borrowing conditions set forth herein but prior to entry of the Final Order, and (y) subject to the entry of the Final Order and the borrowing conditions set forth herein, any remaining undrawn amounts may be drawn pursuant to the terms and conditions of this Interim Order (the "DIP Facility"), with Falcon Strategic Partners IV, LP (the "DIP Lender"), acting as lender, and (B) incur the obligations hereunder (such obligations being referred to herein as the "DIP Obligations") (this Interim Order, together with any Final Order and any related agreements, documents, certificates, instruments, exhibits and schedules delivered or executed from time to time in connection therewith, including the Credit Note (as defined below), as all of the same may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents");

(2) authorization for the Debtors to execute and enter into the DIP Documents and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Documents, including, without limitation, the payment of all principal, interest, fees, expenses, premiums and other amounts payable under the DIP Documents as such amounts become due and payable;

(3) authorization for the Debtors to grant valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to section 364(c)(1)

2

of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (and, solely as set forth in paragraph 14(a)(iii) of this Interim Order, priming liens pursuant to section 364(d)(1) of the Bankruptcy Code), to the DIP Lender, in the DIP Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), to secure all DIP Obligations, as more fully set forth in this Interim Order;

(4) authorization for the Debtors' use of Cash Collateral of the Prepetition Agent and the Prepetition Lender (each as defined below) solely as provided herein, and the provision of adequate protection to the Prepetition Agent and the Prepetition Lender for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below), including any Cash Collateral, solely as set forth in paragraph 15 below;

(5) authorization for the Debtors to borrow amounts under the DIP Facility in accordance with the terms and conditions of the DIP Documents, in accordance with the Approved Budget (as defined below), (A) to finance the ongoing working capital needs of the Debtors and otherwise fund the operations and administration of the Debtors during these Chapter 11 Cases, (B) to make required adequate protection payments, and (C) to pay fees, costs, and expenses in connection with the DIP Documents and these Chapter 11 Cases;

(6) the scheduling of an interim hearing (the "Interim Hearing") on the Motion for this Court to consider entry of this Interim Order;

3

(7) the scheduling of a final hearing (the "Final Hearing") on the Motion for a date that is before the 30th day after the Petition Date (as defined below) to consider entry of a Final Order, *inter alia*, authorizing the borrowings under the DIP Facility on a final basis and approval of notice procedures with respect thereto; and

(8) modification of the automatic stay imposed under section 362 of the Bankruptcy Code, to the extent necessary, to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order.

This Court having found that due and proper notice of the Motion and Interim Hearing was provided by the Debtors in accordance with Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 2002-1, and having held the Interim Hearing on June [ ], 2017 after considering all the pleadings, motions and other papers filed with this Court and the evidence proffered or adduced on the record at the Interim Hearing; and this Court having overruled all unresolved objections to the interim relief requested in the Motion; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors, and their estates, represents a sound exercise of the Debtors' business judgment, and is necessary for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases and after due deliberation and consideration and for good and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    *Petition Date*.  On June 5, 2017 (the "Petition Date"), each Debtor filed a voluntary petition with this Court commencing a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their respective properties as

debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or

examiner has been appointed in any of the Chapter 11 Cases.

        B.    *Jurisdiction and Venue*. This Court has jurisdiction over these proceedings

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the*

*United States District Court for the Southern District of New York*, dated January 31, 2012. This is

a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are

sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001,

9013 and 9014 and Local Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2.

        C.    *Committee Formation*. As of the date hereof, no official committee of

unsecured creditors or any other statutory committee (the "Committee") has been appointed in the

Chapter 11 Cases.

        D.    *Debtors' Stipulations*. Without prejudice to the rights of any other non-

Debtor party-in-interest with standing (but subject to the limitations thereon described in paragraph

19 below), the Debtors hereby admit, acknowledge, agree, and stipulate that:

        (i)    Pursuant to (a) that certain Purchase Agreement dated July 6, 2015
(as amended, supplemented, amended and restated or otherwise modified from time to time
in accordance with the terms thereof, including on August 20, 2015, November 23, 2015,
January 13, 2016, April 11, 2017 (the "Fourth Amendment"), and June 5, 2017 (the "Fifth
Amendment"), the "Prepetition Credit Agreement"), among Debtors National Events
Intermediate, LLC ("NECO"), National Events Holdings, LLC ("Holdings"), and
"Subsidiary Guarantors" National Event Company II, LLC, National Event Company III,
LLC, and World Events Group II, LLC, Jason Nissen, Falcon Strategic Partners IV, LP (in
such capacity, the "Prepetition Lender"), FMP Agency Services, LLC (in such capacity, the
"Prepetition Agent"), the Prepetition Lender agreed to purchase (x) up to $25,000,000 in
aggregate original principal amount of the 11% Senior Secured Notes due 2020 of NECO,
(y) up to $15,000,000 in aggregate original principal amount of the 8% Senior Unsecured
PIK Notes due 2022 of NECO, and (z) 48 Class A Units representing membership interests
in Holdings, with the Fourth Amendment providing for an additional tranche of Senior
Secured Notes in the amount of $4,000,000, and the Fifth Amendment providing
emergency pre-filing funds in the amount of $108,572 on the Petition Date to enable the

5

filing of these Chapter 11 Cases (the "Emergency Pre-Filing Advance"), and (b) the other
Financing Documents (as defined in the Prepetition Credit Agreement and, together with
the Prepetition Credit Agreement, the "Prepetition Loan Documents"), the Prepetition
Lender provided fully perfected secured loans (the "Prepetition Secured Loans") to and for
the benefit of the Debtors in the amount of $29,000,000, and senior unsecured loans (the
"Prepetition Unsecured Loans") in the aggregate amount of $15,000,000.  As of the
Petition Date, the Debtors were indebted to the Prepetition Lender, without defense,
counterclaim, or offset of any kind, in respect of (1) the Prepetition Secured Loans made in
the aggregate outstanding principal amount under the Prepetition Loan Documents of not
less than $29,108,572, plus accrued and unpaid interest and fees with respect thereto
(which, as of June 5, 2017, was not less than $681,111.11, and (2) Prepetition Unsecured
Loans made in the aggregate outstanding principal amount under the Prepetition Loan
Documents of not less than $15,000,000, plus accrued and unpaid interest and fees with
respect thereto (which, as of June 5, 2017, was not less than $2,231,214.20, which
amounts, for the avoidance of doubt, do not include the Prepetition Agent's and the
Prepetition Lender's accrued and unpaid attorneys' fees, costs, and expenses, or any other
premium, fee, make-whole, or penalty payments otherwise required by the terms of the
Prepetition Loan Documents, including, without limitation, upon a prepayment or
acceleration of the obligations thereunder) (such amounts, together with any amounts
incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition
Loan Documents, including but not limited to, accrued and unpaid interest, any fees,
expenses and disbursements, indemnification obligations, and other charges, amounts, and
costs of whatever nature owing, whether or not contingent, whenever arising, accrued,
accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant
to the Prepetition Loan Documents, collectively, the "Prepetition Obligations"; if solely in
connection with the Prepetition Secured Loans, collectively, the "Prepetition Secured
Obligations", and if solely in connection with the Prepetition Unsecured Loans,
collectively, the "Prepetition Unsecured Obligations");

        (ii)    To secure the Prepetition Obligations related to the Prepetition
Secured Loans, the Debtors granted to the Prepetition Agent for the benefit of the
Prepetition Lender security interests in and liens upon (the "Prepetition Liens") all
"Collateral" under and as defined in the Prepetition Loan Documents (the "Prepetition
Collateral");

        (iii)    (a) the Prepetition Obligations constitute legal, valid, enforceable,
non-avoidable, and binding obligations of each of the Debtors; (b) no offsets, defenses, or
counterclaims to the Prepetition Obligations exist; (c) no portion of the Prepetition
Obligations is subject to avoidance, disallowance, reduction, disallowance, disgorgement,
counterclaim, surcharge, or subordination (other than as contemplated by this Interim
Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the
Prepetition Loan Documents are valid and enforceable by the Prepetition Agent on behalf
of the Prepetition Lender against each of the Debtors party thereto; (f) the Prepetition
Secured Obligations constitute allowed secured claims against the Debtors' estates; (g) the
Prepetition Unsecured Obligations constitute allowed unsecured claims against the
Debtors' estates; and (h) the Debtors and their estates have no claim, objection, challenge,

or cause of action against the Prepetition Agent or the Prepetition Lender or any of either of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present, and future, and their respective heirs, predecessors, successors, and assigns, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination (other than as contemplated by this Interim Order), avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Unsecured Obligations, including, without limitation, any right to assert any disgorgement or recovery;

(iv)    All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Agent and the Prepetition Lender;

(v)    As a result of, among other things, the commencement of the Chapter 11 Cases, the Debtors are in default of their debts and obligations under the Prepetition Loan Documents; and

(vi)    Subject to the entry of the Final Order (except with respect to section 364(e) of the Bankruptcy Code, as set forth in paragraphs H and 32 hereof), and as set forth in paragraph 19 hereof, the Debtors hereby forever, unconditionally, and irrevocably release, discharge, and acquit the Prepetition Agent, the Prepetition Lender, the DIP Lender, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to the Prepetition Obligations, the Prepetition Loan Documents, the DIP Facility, or the DIP Documents, including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the Prepetition Liens, the DIP Liens (as defined below), the Prepetition Obligations, and the DIP Obligations. Subject to the entry of the Final Order, the Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Bankruptcy Court entering this Interim Order.

E.      *Need for Postpetition Financing and Use of Cash Collateral*.  Based upon

the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have

sufficient available sources of working capital and financing to carry on the operation and wind-

down of their businesses without the DIP Facility and the use of Cash Collateral.  The Debtors'

ability to maintain business relationships with ticket brokers, vendors, and suppliers, as well as

customers, to meet their ongoing operating obligations, and to satisfy other working capital and

operational needs and otherwise finance their operations is essential to maximizing the value of the

Debtors' estates for the benefit of their creditors.  In addition, based on the record presented at the

Interim Hearing: (i) the Debtors' critical need for financing and use of Cash Collateral is

immediate, and the entry of this Interim Order is necessary to avoid immediate and irreparable

harm to the Debtors' estates and the value of their assets; (ii) in the absence of the DIP Facility and

the use of Cash Collateral, the continued operation of the Debtors' businesses would not be

possible and serious and irreparable harm to the Debtors and their estates would occur; (iii) the use

of Cash Collateral will afford the Debtors adequate time to finalize and execute documents under

the DIP Facility; and (iv) the preservation, maintenance, and enhancement of the value of the

Debtors and their assets are of the utmost significance and importance to a successful

reorganization or wind-down of the Debtors.

F.      *Priming of Prepetition Liens.*  The priming of the Prepetition Liens on the

Prepetition Collateral under section 364(d)(l) of the Bankruptcy Code, as contemplated by this

Interim Order and the DIP Facility and as further described below, will enable the Debtors to

obtain the DIP Facility and, among other benefits, continue to operate their businesses for the

benefit of their estates and stakeholders.  The Prepetition Agent and the Prepetition Lender consent

8

to the priming of the Prepetition Liens on the Prepetition Collateral and have no objection to the

adequate protection thereof as provided in this Interim Order.

       G.    *No Credit on More Favorable Terms*.  Given their current financial

condition, financing arrangements, and capital structure, the Debtors are unable to obtain sufficient

interim and long-term financing from sources other than the DIP Lender on any terms, much less

on terms more favorable than under the DIP Facility and the DIP Documents, and are not able to

obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the

Bankruptcy Code.  The Debtors also are unable to obtain sufficient credit (a) having priority over

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy

Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject

to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is

subject to a lien.  Postpetition financing is unavailable to the Debtors without providing the DIP

Lender:  (i) the DIP Liens in the DIP Collateral, as provided herein with the priorities set forth

herein; (ii) the DIP Superpriority Claims (as defined below); and (iii) the other protections set forth

in this Interim Order.  After considering all alternatives, the Debtors have concluded, in the

exercise of their sound business judgment, that the DIP Facility represents the best financing

available to them at this time and is in the best interests of all of their stakeholders.

       H.    *Findings Regarding the DIP Facility*.  Based upon the pleadings and

proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are

fair and reasonable, are the best available to the Debtors under the circumstances, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are

supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been

negotiated in good faith and at arm's length between the Debtors and the DIP Lender and (iii) any

credit extended, loans made, and other financial accommodations extended to the Debtors by the

DIP Lender, including, without limitation, pursuant to this Interim Order, have been extended,

issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the

Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section

364(e), and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims shall be entitled to

the full protection of Bankruptcy Code section 364(e) in the event that this Interim Order or any

provision hereof is vacated, reversed, or modified, on appeal or otherwise.

   I. *Sections 506(c) and 552(b)*.  As a material inducement to the DIP Lender to

agree to provide the DIP Facility, and in exchange for (a) the DIP Lender's agreement to

subordinate its liens and superpriority claims to the Carve-Out (as defined below), and (b) the

Prepetition Agent's and the Prepetition Lender's agreement to (i) subordinate their Prepetition

Liens and Adequate Protection Liens (as defined below) to the DIP Liens and to the Carve-Out and

(ii) the consensual use of Cash Collateral in accordance with and subject to the Approved Budget

and the terms of this Interim Order, each of the DIP Lender, the Prepetition Agent, and the

Prepetition Lender is entitled to receive, upon entry of the Final Order, (1) a waiver of any equities

of the case exceptions or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of

the provisions of section 506(c) of the Bankruptcy Code subject to the terms hereof.

   J. *Use of Proceeds of the DIP Facility; Use of Cash Collateral; Consent of*
*Prepetition Agent and Prepetition Lender*.  The Debtors have received the necessary consents from

the Prepetition Agent and the Prepetition Lender to (i) the financing arrangements contemplated by

this Interim Order and the DIP Documents and (ii) the Debtors' proposed use of Cash Collateral,

on the terms and conditions set forth in this Interim Order.  Such consents are expressly limited to

the postpetition financing being provided by the DIP Lender and the use of Cash Collateral (in

each case as contemplated by this Interim Order and the DIP Documents) and the provision of adequate protection herein, and shall not extend to any other postpetition financing or to any modified version of the DIP Facility or to any modified version of the use of Cash Collateral.  As a condition to entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral as provided in this Interim Order, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Facility and Cash Collateral shall be used, in each case only in a manner consistent with the terms and conditions of the DIP Documents and this Interim Order and in accordance with the Approved Budget, solely for the purposes set forth in this Interim Order, including (a) working capital and other general corporate purposes of the Debtors during the Chapter 11 Cases (excluding the repayment of any prepetition indebtedness), (b) adequate protection payments, solely as provided for in this Interim Order, (c) the permitted payment of costs of administration of the Chapter 11 Cases, (d) repayment of the Emergency Pre-Filing Advance, (e) payment of interest, fees, costs, and expenses related to the DIP Facility as set forth herein and in the DIP Documents (including the fees and expenses of the DIP Lender's advisors), (f) payment of such prepetition fees, costs, and expenses as consented to by the DIP Lender and approved by the Bankruptcy Court, including prepetition expenses approved by the Bankruptcy Court in connection with the Debtors' "first day" motions, and (g) payment of such other amounts permitted by the Approved Budget (including Permitted Variances, as defined below).

K.    *Adequate Protection*.  The Prepetition Agent and the Prepetition Lender are entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, solely as set forth in paragraph 15 below, for any diminution in value of their interests in the Prepetition Collateral (including Cash Collateral)

11

resulting from, arising from, or attributable to, among other things, (i) the Debtors' use, sale, or lease of such Prepetition Collateral, (ii) the granting of liens under section 364 of the Bankruptcy Code, (iii) market value decline of such Prepetition Collateral, (iv) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and (v) the subordination of the Prepetition Liens and the Prepetition Secured Obligations to the DIP Obligations and the DIP Liens (collectively, and solely to the extent of any such diminution in value, "Diminution in Value").

L.    *Notice*.    The Debtors have represented that telephonic notice, facsimile notice, or overnight mail notice of this Interim Hearing and the proposed entry of this Interim Order has been provided to: (i) the thirty (30) largest unsecured creditors on a consolidated basis; (ii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (iii) Cahill Gordon & Reindel LLP ("Cahill"), as counsel to the Prepetition Agent, the Prepetition Lender, and the DIP Lender; (iv) all known parties, to the best of the Debtors' knowledge, information, or belief, asserting a lien against the DIP Collateral; (v) the Internal Revenue Service and applicable state taxing authorities; (ix) the United States Securities and Exchange Commission; and (x) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules and the Local Rules.    Requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001, and no other notice need be provided for entry of this Interim Order.

M.    *Immediate Entry*.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).    Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.    This Court concludes that entry of this Interim Order is in the best interests of the

Debtors' respective estates and creditors as its implementation will, among other things, enhance the Debtors' prospects for maximizing the value of their estates for the benefit of their stakeholders.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Approval of Interim Order. The Motion is approved, on an interim basis, on the terms and conditions set forth in this Interim Order. Any objections to the interim relief requested in the Motion that have not previously been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Interim Order shall become effective immediately upon its entry.

2.      Approval of DIP Documents; Authority Thereunder. The DIP Facility is hereby approved, including authorization for the Debtors to repay the Emergency Pre-Filing Advance. The Debtors are hereby authorized to enter into, and execute and deliver, the DIP Documents and such additional documents, instruments, certificates, and agreements as may be required or reasonably requested by the DIP Lender to implement the terms or effectuate the purposes of this Interim Order and the DIP Documents.

3.      Validity of DIP Documents. Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute, and is hereby deemed to be, the legal, valid and binding obligation of the Debtors party thereto, enforceable against each such Debtor in accordance with its terms. Loans advanced under the DIP Facility (the "DIP Loans") until the Final Hearing will be made to fund the Debtors' working capital and general corporate needs in the ordinary course of business and to pay such other amounts as are required or permitted to be paid

13

pursuant to this Interim Order and any other orders of this Court, in each case to the extent

permitted hereunder and under the Approved Budget. No obligation, payment, transfer, or grant of

security under the this Interim Order with respect to the DIP Facility shall be stayed, restrained,

voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-

bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

   4. <u>Authorization to Borrow</u>. Upon entry of this Interim Order and during the

period prior to entry of any final order on the Motion, the Debtors are immediately authorized to

borrow from the DIP Lender under the DIP Facility an aggregate principal amount not to exceed

$250,000.

   5. <u>Terms of the DIP Facility</u>. The DIP Facility and the DIP Loans made

thereunder shall be subject to the following terms and conditions:

   a. <u>General</u>. Except as otherwise provided herein or approved in

advance by the DIP Lender in writing, the proceeds of the DIP Facility and Cash Collateral shall

be used only in compliance with the Approved Budget.

   b. <u>Maturity Date</u>. The DIP Loans shall mature on the date (the

"<u>Maturity Date</u>") that is earliest of (i) 30 days after the date hereof, if this Court does not enter the

Final Order in a form acceptable to the DIP Lender in its sole discretion; (ii) 90 days after the

Petition Date; (iii) the date on which a chapter 11 plan of reorganization becomes effective; (iv)

upon entry of an order dismissing or converting any of the Chapter 11 Cases to a case under

chapter 7 of the Bankruptcy Code; (v) upon entry of an order appointing a trustee or examiner with

respect to any of the Chapter 11 Cases; (vi) upon an uncured material breach of any representation,

warranty, or covenant or any other provision of this Interim Order; or (vii) the occurrence of an

Event of Default (as defined below).

14

Interim DIP Order   Pg 16 of 56

c.    <u>Interest Rate</u>.  11% per annum, payable monthly in arrears no later than 5:00 p.m. New York time on the last calendar day of each month and on the maturity date of the principal of the DIP Loans. Interest on the DIP Loans shall be based on a year of three hundred sixty (360) days and charged for the actual number of days elapsed

d.    <u>Default Interest Rate</u>.  15% per annum, payable monthly in arrears.

e.    <u>Fees</u>.  None.

f.    <u>Advances</u>.  The DIP Lender shall not make advances unless it shall have received a written request from the Debtors for the same no later than 12:00 noon, prevailing Eastern Time, one business day prior to the day such advance is requested to be made.  The DIP Lender shall not be required to make any advance (i) in an amount less than $25,000; (ii) more than once per week; (iii) in an amount that would exceed the total amount set forth in the Approved Budget for the succeeding week, less cash on hand at the time of the request; (iv) if such advance would cause the amounts outstanding under the DIP Facility to exceed the Maximum Amount (and prior to the entry of the Final Order, the Maximum Interim Amount); or (v) after the occurrence of the Maturity Date.

g.    <u>Mandatory Prepayments and Repayments</u>.  The proceeds of the sale of any DIP Collateral and any other amounts received on account of or with respect to any DIP Collateral shall immediately be applied to repay or prepay, as the case may be, the following obligations:  (i) first, accrued interest and fees and other amounts (other than principal) outstanding under the DIP Facility, if any; and (ii) second, principal amounts owed under the DIP Facility; provided, however, that the Debtors may retain such proceeds and amounts to the extent necessary to cover expenses anticipated to be due in accordance with the Approved Budget prior to the next week's anticipated advance under the DIP Facility.

h.    <u>Debtors' Representations and Warranties</u>. The Debtors hereby, and as of every requested advance hereunder, represent and warrant as follows: (i) the Debtors are limited liability companies duly organized, validly existing, and in good standing under applicable law, are qualified to do business in each jurisdiction where they do business, and have requisite power and authority to assume all of their obligations hereunder and to borrow under the DIP Facility; (ii) the Debtors have no subsidiaries of which they have not informed the DIP Lender; (iii) since June 1, 2017, there has been no adverse change in the Debtors' financial condition or operations, and the Debtors have provided the DIP Lender with financial statements that correctly and fairly in all material respects reflect such financial condition; (iv) the Approved Budget reflects the reasonably anticipated needs of the Debtors; (v) the Debtors are in compliance with the Approved Budget; (vi) the Debtors have not made any untrue statement of material fact to the DIP Lender; and (vi) the Debtors reasonably anticipate that each of these representations and warranties will remain true in all material respects until termination of the Debtors' obligations under this Interim Order and the DIP Documents.

i.    <u>Affirmative Covenants</u>. The Debtors shall comply with each of the covenants set forth in Sections 6.01-6.16 of the Prepetition Credit Agreement (provided that references therein to "Noteholders" or "Agent" shall be deemed to be references to the DIP Lender, references to "this Agreement" or the Financing Documents shall be deemed to be references to the DIP Facility and the DIP Documents, references to "Notes" shall be deemed to be references to the DIP Loans, and as appropriate in the discretion of the DIP Lender shall be further interpreted to refer to the DIP Facility in lieu of the Prepetition Credit Agreement).

j.    <u>Negative Covenants</u>. The Debtors shall not (i) incur any Indebtedness (as defined in the Prepetition Credit Agreement), other than the DIP Facility, (ii)

16

create, incur, assume or permit to exist, any Lien (other than the Liens under the DIP Facility), (iii)

enter into any Sale and Leaseback Transaction or consummate any Asset Sale (each as defined in

the Prepetition Credit Agreement) (other than in accordance with the Approved Budget), (iv) make

any investment in any person other than the Debtors, (v) make any Restricted Payment (as defined

in the Prepetition Credit Agreement), or (vi) enter into any transaction with any Affiliate (as

defined below) (other than another Debtor or the DIP Lender), in each case, without the prior

written approval of the DIP Lender.

          k.     Events of Default. Upon (i) the occurrence of any of the events or

circumstances set forth in Sections 9.01(a)-(f) or (i)-(n) of the Prepetition Credit Agreement

(provided that references therein to "Noteholders" or "Agent" shall be deemed to be references to

the DIP Lender, references to "this Agreement" or the Financing Documents shall be deemed a

reference to the DIP Facility and DIP Documents, references to "Notes" shall be deemed to be

references to the DIP Loans and as appropriate in the discretion of the DIP Lender shall be further

interpreted to refer to the DIP Facility in lieu of the Prepetition Credit Agreement); (ii) the

Debtors' failure to comply with any of the terms set forth in this Interim Order, including without

limitation failure to comply with the Approved Budget (including the Professional Fee Accrual

Schedules, defined below) after giving effect to any Permitted Variances; or (iii) the Debtors'

failure to collect cash proceeds during any rolling 4-week period of at least eighty percent (80%)

of the "Total Inflows" included in the Approved Budget, in each case, an "Event of Default" shall

be deemed to have occurred, and at any time thereafter, the DIP Lender shall be entitled to take

any or all of the actions set forth in paragraph 26 hereof and pursuant to the terms thereof without

further notice, motion, or application to, order of, or hearing before, this Court.

17

l.      <u>Conditions of Lending</u>.  The DIP Lender shall not be required to make any advances under this Interim Order unless and until each of the following conditions is satisfied or waived by the DIP Lender in its sole discretion:  (i) this Interim Order shall have been entered on or before 5:00 p.m. prevailing Eastern Time on June 9, 2017, in form and substance acceptable to the DIP Lender in its sole discretion; (ii) the DIP Lender shall have agreed to an Approved Budget in its sole discretion and each such borrowing under the DIP Facility shall be in accordance with the terms of such Approved Budget; (iii) no Event of Default shall have occurred; (iv) all "first day orders" entered by this Court shall be acceptable to the DIP Lender in its sole discretion; (v) the Debtors shall be in compliance with all terms, provisions, conditions, and covenants contained herein; and (vi) each of the representations and warranties contained herein remain true and correct; (vii) each Debtor shall have executed and delivered a promissory note to the DIP Lender in the principal amount of the Maximum Amount (as may be amended, modified, or replaced from time to time, the "<u>Credit Note</u>").  The Credit Note shall evidence the Debtors' absolute and unconditional obligation to repay the DIP Lender for all of the DIP Loans made by the DIP Lender under the DIP Facility, with interest as herein and therein provided.  Each and every DIP Loan under the DIP Facility shall be deemed evidenced by the Credit Note.  The Credit Note shall be substantially in the form set forth in <u>Exhibit 1</u> attached hereto.

m.      <u>Other Terms</u>.  The provisions of Sections 13.03-13.09 and 13.12 of the Prepetition Credit Agreement are hereby incorporated by reference, provided that references therein to "Noteholders" or "Agent" shall be deemed to be references to the DIP Lender, references to "this Agreement" or the Financing Documents shall be deemed to be references to the DIP Facility and the DIP Documents, references to "Notes" shall be deemed to be references to the DIP Loans and as appropriate in the discretion of the DIP Lender shall be further interpreted to refer to the DIP Facility in lieu of the Prepetition Credit Agreement.

18

6.      The DIP Lender shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents have been satisfied in full or waived by the DIP Lender in its sole and absolute discretion.

7.      Use of Cash Collateral.  Subject to the terms and conditions of this Interim Order and the other DIP Documents and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral until the earlier of (a) the Maturity Date, and (b) the date upon which the Debtors' right to use Cash Collateral is terminated hereunder as a result of any Event of Default under the DIP Facility.

8.      Use of Proceeds and Cash Collateral; No Segregation.  Notwithstanding anything to the contrary in any of the first day orders, and after the entry of this Interim Order, the Debtors shall use advances of credit under the DIP Facility and Cash Collateral only for the purposes permitted by this Interim Order; provided, that except as set forth in paragraph 18 hereof, no proceeds of the DIP Facility shall be used to investigate, challenge, object to, contest, or raise any defense to, the validity, security, perfection, priority, extent, or enforceability of any amount due under or the liens or claims granted under or in connection with the Prepetition Loan Documents.  The Prepetition Liens shall continue to attach to the Cash Collateral irrespective of the commingling of Cash Collateral with other cash of the Debtors (if any).  Any failure by the Debtors on or after the Petition Date to comply with the segregation requirements of section 363(c)(4) of the Bankruptcy Code in respect of any Cash Collateral shall not be used as a basis to challenge the Prepetition Secured Obligations, or the extent, validity, enforceability, or perfected status of the Prepetition Liens.

9.      Approved Budget.

a.    <u>General</u>. Except as otherwise provided herein or approved by the DIP Lender, the proceeds of the DIP Facility and Cash Collateral shall be used only in compliance with the Approved Budget.

b.    <u>Initial Budget</u>. Attached as <u>Exhibit 2</u> hereto and incorporated by reference herein is a cash flow forecast for the period beginning as of the Petition Date through and including the 13th week after the Petition Date, broken down by week, including the anticipated weekly uses of proceeds of the DIP Loans and Cash Collateral for such period, which shall include, among other things, line items for projected total receipts, total operating disbursements, total restructuring fees (including professional fees and fees for the Debtors' chief restructuring officer and financial advisory firm listed on an accrual basis, referenced herein as the "<u>Professional Fee Accrual Schedules</u>"), and net cash flow, which forecast shall be in form and substance satisfactory to the DIP Lender in its sole discretion (the "<u>Initial Budget</u>"). Upon entry of this Interim Order and approval by the DIP Lender, the Initial Budget shall be deemed an "<u>Approved Budget</u>".

c.    <u>Updated Budget</u>. By no later than 5:00 p.m. New York City time on the third (3rd) business day of each week ending after Petition Date, the Debtors shall deliver to the DIP Lender a supplement to the Initial Budget (or the previously supplemented Approved Budget, as the case may be), covering the 13-week period that commences with the week in which such supplemental budget is delivered, consistent with the form and level of detail set forth in the Initial Budget and otherwise in form and substance satisfactory to the DIP Lender in its sole discretion (each such supplement, an "<u>Updated Budget</u>"); <u>provided</u> that the Debtors shall comply with the requirements set forth herein with respect to the timing and content of each Updated Budget. The Updated Budget shall become the Approved Budget only under the circumstances

20

described herein.  The Debtors' expenses in relation to the "Total Outflows" as set forth in the

Approved Budget for any given week, as well as amounts incurred by estate professionals and

advisors in relation to any of the Professional Fee Accrual Schedules for any given 4-week period,

shall be permitted to vary no more than the greater of 15% and $2,500 (the "Permitted

Variances").

        d.    Variance Reporting.  The Debtors shall deliver to the DIP Lender

variance reports in form and substance acceptable to the DIP Lender in its sole discretion (the

"Variance Reports") in accordance with the terms and on the dates set forth herein.  There shall be

a weekly teleconference between the Debtors (and their advisors) and the DIP Lender (and its

advisors) to discuss the Variance Reports, including a management discussion and analysis of

permanent versus timing differences for any variances from the Approved Budget.

        e.    Permitted Variances and Financial Covenants.  The Debtors shall

comply with the Permitted Variances and the financial covenants set forth herein.

        f.    Liquidity Reporting.  On each Monday and Thursday of each week

after the Petition Date, the Debtors shall deliver a liquidity report to the DIP Lender, in form and

substance satisfactory to the DIP Lender in its sole discretion.

        g.    Budget Compliance.  The Debtors shall comply with the Approved

Budget, subject to Permitted Variances, and all budget requirements set forth herein and in the

other DIP Documents.

        10.    Payment of DIP Costs and Expenses.  Subject to the limitations set forth

below, the Debtors are hereby authorized to and shall pay upon demand all fees, costs, expenses,

premiums, and other amounts payable under the terms of the DIP Documents and all other

reasonable out-of-pocket costs and expenses of the DIP Lender (including, without limitation, the

reasonable prepetition and postpetition fees and out-of-pocket costs and expenses of Cahill, as

counsel to the DIP Lender, and any other necessary or appropriate counsel, advisors, professionals,

and/or consultants in connection with advising the DIP Lender), subject to receiving a written

invoice therefor.   None of such fees, costs, expenses, or other amounts shall be subject to Court

approval (subject to the limitations below) or U.S. Trustee guidelines, and no recipient of any such

payment shall be required to file with respect thereto any invoices or any interim or final fee

applications with this Court; provided, however, that copies of any such invoices shall be provided

contemporaneously to the U.S. Trustee and counsel to the Committee, if any; provided, further,

however, that such invoices may be in summary form and may contain redactions, and the

provision of such invoices shall not constitute a waiver of the attorney-client privilege or any

benefits of the attorney work product doctrine.  If the Debtors, the U.S. Trustee, or the Committee

objects to the reasonableness of the fees and expenses of the DIP Lender, and such objection

cannot be resolved within ten (10) calendar days of receipt of such invoices, the Debtors, the U.S.

Trustee, or the Committee, as the case may be, shall file with the Court and serve on the DIP

Lender an objection limited to the reasonableness of such fees and expenses (each, a "Fee

Objection").  The professional fees of the DIP Lender shall not be subject to the provisions of

sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.  The Debtors shall pay in accordance

with the terms and conditions of this Interim Order within fifteen (15) calendar days after receipt

of the applicable invoice (a) the full amount invoiced if no Fee Objection has been timely filed,

and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection

has been timely filed.  All such unpaid fees, costs, expenses, and other amounts owed or payable to

the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and

protections afforded to the DIP Obligations under this Interim Order.

22

11.     <u>Indemnification</u>.  The Debtors are hereby authorized to and hereby agree to indemnify and hold harmless the DIP Lender and, solely in their capacities as such, each of its respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present, and future, and their respective heirs, predecessors, successors, and assigns (each, an "<u>Indemnified Party</u>") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including, without limitation, reasonable attorney's fees), or disbursements of any nature whatsoever that may be imposed on, incurred by, or asserted against an Indemnified Party in any way relating to or arising out of any of the DIP Documents or any other document contemplated hereby or thereby or the transactions contemplated thereby or by this Interim Order (including, without limitation, the exercise by the DIP Lender of discretionary rights granted hereunder) or any action taken or omitted by the DIP Lender under any of the DIP Documents or any document contemplated hereby or thereby; <u>provided</u> that the Debtors shall not have any obligation to indemnify and hold harmless any Indemnified Party under this paragraph with respect to any matter solely resulting from (a) the fraud, gross negligence, or willful misconduct of such Indemnified Party or (b) violations by such Indemnified Party of this Interim Order, as determined by a court of competent jurisdiction in a final non-appealable judgment or order.  No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is determined by a court of competent jurisdiction in a final non-appealable judgment or order to have resulted solely from such Indemnified Party's (a) fraud, gross negligence, or willful

misconduct or (b) violations of this Interim Order. All indemnities made or owed by any Debtor to

the Indemnified Parties shall be secured by the DIP Collateral and afforded all of the priorities and

protections afforded to the DIP Obligations under this Interim Order.

12.    <u>DIP Superpriority Claims</u>. In accordance with Bankruptcy Code section

364(c)(1), the DIP Obligations shall constitute senior administrative expense claims (the "<u>DIP

Superpriority Claims</u>") against each Debtor, on a joint and several basis with priority in payment

over any and all administrative expenses at any time existing or arising, of any kind or nature

whatsoever, including, without limitation, the kinds specified or ordered pursuant to any provision

of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328,

330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 or

otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant

to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become

secured by a judgment lien or other non-consensual lien, levy, or attachment; <u>provided</u>, <u>however</u>,

that the DIP Superpriority Claims shall be subject to the payment in full in cash of any amounts

due under the Carve-Out; <u>provided</u>, <u>further</u>, that the DIP Superpriority Claims shall have recourse

to and be payable from all prepetition and postpetition property of the Debtors and their estates and

all proceeds thereof, including, subject to the entry of the Final Order, the proceeds of avoidance

actions under chapter 5 of the Bankruptcy Code.

13.    <u>DIP Liens</u>.

(a)    As security for the DIP Obligations, immediately upon, and effective

as of entry of this Interim Order, the DIP Lender is granted continuing, valid, binding, enforceable,

non-avoidable, and automatically and properly perfected security interests in and liens

(collectively, the "<u>DIP Liens</u>") on all DIP Collateral as collateral security for the prompt and

24

complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations.  The term "DIP Collateral" means all assets and properties (whether tangible, intangible, real, personal, or mixed) of the Debtors, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, before or after the Petition Date, including, without limitation: (i) all Prepetition Collateral; (ii) all cash and cash equivalents; (iii) all funds in any deposit account, securities account, or other account of the Debtors and all cash and other property deposited therein or credited thereto from time to time; (iv) all accounts and other receivables (including those owed to the Debtors generated by intercompany transactions); (v) all contracts and contract rights; (vi) all instruments, documents, and chattel paper; (vii) all securities (whether or not marketable); (viii) all goods, as-extracted collateral, equipment, inventory, and fixtures; (ix) all real property interests; (x) all interests in leaseholds, (xi) all franchise rights; (xii) all patents, tradenames, trademarks (other than intent-to-use trademarks), copyrights, and all other intellectual property; (xiii) all general intangibles; (xiv) all capital stock, limited liability company interests, partnership interests, and financial assets; (xv) all investment property; (xvi) all supporting obligations; (xvii) all letters of credit issued to the Debtors and letter of credit rights; (xviii) all commercial tort claims; (xix) all other claims and causes of action and the proceeds thereof (including, without limitation, all claims and causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof (subject to entry of the Final Order)); (xx) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts, and other computer materials and records); (xxi) to the extent not covered by the foregoing, all other goods, assets, or properties of the Debtors, whether tangible, intangible, real, personal, or

mixed; and (xxii) all products, offspring, profits, and proceeds of each of the foregoing and all
accessions to, substitutions and replacements for, and rents, profits, and products of, each of the
foregoing, and any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to
such Debtor from time to time with respect to any of the foregoing.

(b)   To the fullest extent permitted by the Bankruptcy Code or applicable
law, any provision of any lease, loan document, easement, use agreement, proffer, covenant,
license, contract, organizational document, or other instrument or agreement that requires the
consent or the payment of any fees or obligations to any entity in order for any of the Debtors to
pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the
proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the DIP Liens
on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment
and/or sale thereof by any Debtor, in favor of the DIP Lender in accordance with the terms of this
Interim Order or in favor of the Prepetition Agent and the Prepetition Lender in accordance with
the terms of this Interim Order.

14.   <u>Priority of DIP Liens</u>.

(a)   To secure the DIP Obligations, immediately upon, and effective as
of entry of this Interim Order, the DIP Lender is hereby granted continuing, valid, binding,
enforceable, non-avoidable, and automatically and properly perfected DIP Liens in the DIP
Collateral as follows, in each case subject to the Carve-Out:

(i)   pursuant to section 364(c)(2) of the Bankruptcy Code, valid,
enforceable, non-avoidable automatically and fully perfected first priority liens on and
security interests in all DIP Collateral that is not otherwise subject to a valid, perfected, and
non-avoidable security interest or lien as of the Petition Date;

(ii)   pursuant to section 364(c)(3) of the Bankruptcy Code, valid,
enforceable, non-avoidable automatically, and fully perfected junior liens on and security
interests in all DIP Collateral (other than as set forth in clauses (i) and (iii) of this

paragraph) that is subject to liens that the DIP Lender has acknowledged in writing to be permitted liens; and

(iii)    pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all DIP Collateral that also constitutes Prepetition Collateral securing the Prepetition Secured Obligations, wherever located, which senior priming liens and security interests in favor of the DIP Lender shall be senior to the Prepetition Liens and the Adequate Protection Liens granted hereunder.

(b)    Except as expressly set forth herein, the DIP Liens and the DIP Superpriority Claims:  (i) shall not be made junior to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any successor cases, and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any successor cases, and/or upon the dismissal of any of the Chapter 11 Cases or any successor cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or Affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.

15.    Adequate Protection.

(a) As adequate protection of the interest of the Prepetition Agent and the Prepetition Lender in the Prepetition Collateral, the Prepetition Agent and the Prepetition Lender are hereby granted:

(i)    payment in cash on a current basis of all reasonable and documented out-of-pocket fees and expenses of the Prepetition Agent and the Prepetition Lender, including the reasonable and documented out-of-pocket fees and expenses of their professional advisors (including, without limitation, the reasonable prepetition and postpetition fees and out-of-pocket costs and expenses of the Prepetition Agent, the Prepetition Lender, Cahill, as counsel to the Prepetition Agent and the Prepetition Lender, and any other necessary or appropriate counsel, advisors, professionals, and/or consultants in connection with advising the Prepetition Agent and the Prepetition Lender), subject to receiving a written invoice therefor, and regardless of whether such amounts are in excess of the amounts set forth in the Approved Budget. Such invoices may be combined with

27

(and need not be separated from) those provided for in paragraph 10 hereof, and the same provisions for circulation and review shall apply;

(ii)    solely to the extent of the Diminution in Value of the interest of the Prepetition Agent and the Prepetition Lender in the Prepetition Collateral from and after the Petition Date, continuing, valid, binding, enforceable, unavoidable, and automatically perfected postpetition liens and security interests in the DIP Collateral (the "Adequate Protection Liens"), which liens shall be (x) junior only to the DIP Liens and the Carve-Out, and (y) senior in priority to all other liens, including the Prepetition Liens. Except as expressly provided in this Interim Order or as otherwise agreed to by the parties, the Adequate Protection Liens shall not be made junior to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any successor cases and shall be valid and enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any successor cases until such time as the Prepetition Secured Obligations owed under the Prepetition Loan Documents are paid in full.  The Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens;

(iii)    solely to the extent of the Diminution in Value of the interest of the Prepetition Agent and the Prepetition Lender in the Prepetition Collateral from and after the Petition Date, allowed superpriority administrative expense claims (the "Adequate Protection Claims"), which claims shall be (x) junior to the DIP Superpriority Claims and the Carve-Out, and (y) senior to and have priority over any administrative expense claims, unsecured claims, and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any successor cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, (A) administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, or (B) any claims allowed pursuant to the obligations under the Prepetition Loan Documents.  The Adequate Protection Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral (including, without limitation, any and all claims (including commercial tort claims) and causes of action and the proceeds thereof), including, subject to the entry of the Final Order, the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code.  Except for the DIP Superiority Claims and the Carve-Out, the Adequate Protection Claims shall not be made junior to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any successor cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any successor cases until such time as the

28

Prepetition Secured Obligations owed under the Prepetition Loan Documents are paid in full;

       (iv)    the Debtors shall cooperate with, consult with, and provide to the Prepetition Agent and the Prepetition Lender all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of any of the Debtors. In addition, the Debtors shall authorize each of their respective representatives, advisors (including independent certified public accountants, financial advisors and investment bankers), professionals, consultants, agents and/or employees, to cooperate and consult with the Prepetition Agent and the Prepetition Lender as reasonably requested from time to time; and

       (v)    the Debtors shall comply with the Approved Budget, subject to Permitted Variances, and all budget requirements set forth herein and in the DIP Documents.

       (b)    In the event that the Prepetition Secured Obligations are irrevocably paid in full in cash, and the Investigation Termination Date (as defined below) has passed without any Challenge (as defined below) filed against the Prepetition Agent and/or the Prepetition Lender or otherwise relating to the Prepetition Liens or the Prepetition Secured Obligations, the Debtors' obligation to provide the Prepetition Agent and the Prepetition Lender the adequate protection pursuant to this paragraph 15 shall terminate on and as of the date of such payment or the Investigation Termination Date, whichever is later, without further notice to or action of any person. In the event that any portion of the Prepetition Secured Obligations is ordered by the Court to be reinstated or the proceeds of the repayment thereof are disgorged for reasons other than a successful Challenge of the Prepetition Liens or the Prepetition Secured Obligations, for so long as such portion of the Prepetition Secured Obligations remains outstanding, the adequate protection provided for in this paragraph 15 shall be reinstated with respect to such outstanding Prepetition Secured Obligations until the Prepetition Secured Obligations are paid in full in cash as if such previous payment or repayment thereof had never occurred.

(c)      Notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens on the DIP Collateral shall be senior to the Prepetition Liens on the Prepetition Collateral and the Adequate Protection Liens, in each case, on such DIP Collateral.

(d)      Without limiting any rights of the Prepetition Agent and the Prepetition Lender as set forth in this Interim Order, if there is a successful Challenge pursuant to paragraph 19 hereof with respect to any portion of the interests of the Prepetition Agent and the Prepetition Lender in the Prepetition Collateral, the Adequate Protection Liens and the Adequate Protection Claims shall not apply solely with respect to that portion of the interests of the Prepetition Agent and the Prepetition Lender in the Prepetition Collateral that was subject to a successful Challenge.

16.      <u>Adequate Protection Reservation; Section 507(b) Reservation</u>.  The receipt by the Prepetition Agent and the Prepetition Lender of the adequate protection provided pursuant to this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Agent and the Prepetition Lender to seek additional forms of adequate protection at any time.  Subject only to the Carve-Out described in paragraph 17 hereof, nothing contained herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in connection with any request for additional adequate protection by any party.

17.      <u>Carve-Out</u>.  As used in this Interim Order, the term "<u>Carve-Out</u>" shall mean the sum of the following:

a.      all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below);

30

b.      all allowed and unpaid fees and expenses incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code, and the Committee, if any, pursuant to section 328 or 1103 of the Bankruptcy Code (each, a "Professional") at any time before or on the first business day following termination of the DIP Facility, whether allowed by the Court prior to or after such termination, provided, however, that in no event shall any such fees and expenses exceed the amount set forth in the Approved Budget for any such Professional, less any amounts previously paid to any such Professional; and

c.      all reasonable fees and expenses up to $15,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below).

18.    <u>Limitation on Use of Cash Collateral and DIP Facility Proceeds</u>. Notwithstanding anything herein to the contrary, except for the Maximum Investigation Budget (as defined below), which can be utilized by the Committee solely in accordance with paragraph 19 hereof, no portion of the Carve-Out, the DIP Facility, the DIP Collateral, the Prepetition Collateral, or Cash Collateral shall include, apply to, or be available for any fees, costs, or expenses incurred by any party, including the Debtors or any Committee, in connection with any of the following: (i) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support, or prosecution of any claims, counter-claims, causes of action, adversary proceedings, applications, motions, objections, defenses, or other contested matters against any of the DIP Lender, the Prepetition Agent, or the Prepetition Lender, or any of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present, and future, and their respective heirs, predecessors, successors, and assigns, in each case in their respective capacities as

such and with respect to any transaction, occurrence, omission, action, or other matter related to any Debtor (including formal discovery proceedings in anticipation thereof) (each, a "Loan Party Claim"), including, without limitation, (a) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, the DIP Superpriority Claims, or security interests and liens of the DIP Lender in respect thereof, (b) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Obligations or the Prepetition Liens, (c) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code against the Prepetition Agent or the Prepetition Lender, (d) investigating or asserting any so-called "lender liability" claims and causes of action against the Prepetition Agent or the Prepetition Lender or the DIP Lender; and (e) investigating or asserting any action seeking to invalidate, set aside, avoid, or subordinate (other than as contemplated by this Interim Order), in whole or in part, the Prepetition Obligations or the DIP Loans; (ii) the assertion of any claims or causes of action against the Prepetition Agent, the Prepetition Lender, or the DIP Lender, including, without limitation, claims or actions to hinder or delay the assertions, enforcement, or realization on the DIP Collateral or the liens securing the Prepetition Secured Obligations in accordance with this Interim Order; (iii) seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to the Prepetition Agent, the Prepetition Lender, or the DIP Lender hereunder or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such applicable parties' prior written consent; (iv) the payment of any amount on account of any claims arising prior to the Petition Date unless such payments are approved by the DIP Lender or are approved by order of the Bankruptcy Court; or (v) any purpose that is prohibited under the Bankruptcy Code; provided, however, that

notwithstanding anything to the contrary herein, no more than $10,000 (the "Maximum Investigation Budget") of the proceeds of the DIP Facility or any proceeds of the DIP Collateral or Cash Collateral may be used by any Committee to investigate any Loan Party Claim.

19.    Reservation of Certain Third Party Rights. The Committee and any other party in interest (solely to the extent each is granted standing) shall have a maximum of sixty (60) calendar days from the date of entry of the Final Order (the "Investigation Termination Date") to commence an appropriate contested matter or adversary proceeding (a "Challenge") asserting any Loan Party Claim; provided, however, that if the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code prior to the earlier of (x) a determination by the Committee not to bring a Challenge, or (y) the expiration of the Investigation Termination Date, then a chapter 7 trustee  appointed in the chapter 7 cases (and only a chapter 7 trustee) shall have an additional thirty (30) calendar days after the chapter 7 trustee's appointment in which to bring a Challenge.  If a Challenge is not filed on or before the Investigation Termination Date (or such other later date as ordered by this Court or extended by the written consent of the DIP Lender, then: (a) the agreements, acknowledgements, and stipulations contained in paragraph D of this Interim Order shall be irrevocably binding on the Debtors, the estates, any Committee, all creditors of the Debtors, and all parties-in-interest, and any and all successors-in-interest as to  any of the foregoing, including any chapter 11 trustee or chapter 7 trustee appointed in the Chapter 11 Cases or any subsequent chapter 7 cases, without further action by any party or this Court, and the Debtors, any Committee, all creditors of the Debtors, and any other party-in-interest and any and all successors-in-interest as to any of the foregoing, including any chapter 11 trustee or chapter 7 trustee, shall thereafter be forever barred from bringing any Challenge with respect thereto; (b) the Prepetition Liens shall be deemed to constitute valid, binding, enforceable, and perfected liens and

security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Obligations shall be deemed to be finally allowed claims for all purposes against each of the Debtors, including in any subsequent chapter 7 cases, in the amounts set forth in paragraph D, and shall not be subject to challenge by any party-in-interest as to validity, priority, or otherwise; and (d) the Debtors shall be deemed to have released, waived, and discharged the Prepetition Agent and the Prepetition Lender (whether in their prepetition or postpetition capacity), together with each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations. Notwithstanding anything to the contrary herein: (x) if any such Challenge is timely commenced, the stipulations contained in paragraph D of this Interim Order shall nonetheless remain binding and preclusive on all parties-in-interest (other than the party that has brought such Challenge in connection therewith and then only with respect to the stipulations that are subject to the Challenge and not to any stipulations not subject to the Challenge) except to the extent that such stipulations are successfully challenged in such Challenge; and (y) the Prepetition Agent, the Prepetition Lender, and the DIP Lender reserve all of their rights to contest on any grounds any Challenge and preserve any and all of their rights to appeal and stay any orders issued in connection with a successful Challenge. For the avoidance of doubt, nothing in this Interim Order vests or confers on the Committee or any other entity or person standing or authority to pursue any cause of action belonging to the Debtors or their estates.

20.        Bankruptcy Code Section 506(c) Waiver.  Subject to the entry of the Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender, the Prepetition Agent, or the Prepetition Lender upon, the DIP Collateral or the Prepetition Collateral (as applicable), and no costs or expenses of administration that have been or may be incurred in any of the Chapter 11 Cases or any subsequent chapter 7 cases at any time shall be charged against the DIP Lender, the Prepetition Agent, or the Prepetition Lender, or any of their respective claims or liens (including any claims or liens granted pursuant to this Interim Order).

21.        No Marshaling/Application of Proceeds.  In no event shall the DIP Lender, the Prepetition Agent, or the Prepetition Lender, subject to entry of the Final Order, be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition Collateral (as applicable), and all proceeds thereof shall be received and used in accordance with this Interim Order.  In the event that the DIP Obligations are paid in full in cash by the Debtors pursuant to the terms of a confirmed chapter 11 plan or from the proceeds of a sale that includes assets of the Debtors, if any, that were not the subject of a valid, perfected lien or security interest on the Petition Date (the "Unencumbered Assets"), the proceeds of such Unencumbered Assets shall be deemed applied first to the DIP Obligations until the DIP Obligations are paid in full.

22.        Section 552(b).  Upon entry of the Final Order, the Prepetition Agent and the Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) shall not apply to

35

the Prepetition Agent or the Prepetition Lender with respect to the proceeds, products, offspring, or
profits of any of the Prepetition Collateral.

23.    <u>Disposition of Collateral; Application of Proceeds</u>. Except as
expressly permitted by this Interim Order or the DIP Lender, the Debtors shall not sell, transfer,
lease, encumber, or otherwise dispose of any portion of the DIP Collateral or the Prepetition
Collateral other than in the ordinary course of business without an order of the Court or the prior
written consent of the DIP Lender. Notwithstanding anything otherwise provided herein, upon the
sale of all or substantially all of the collateral secured by the DIP Liens, the Debtors shall use cash
in an amount equal to 100% of any net cash proceeds of such sale to immediately satisfy the DIP
Obligations.

24.    <u>Proceeds of Subsequent Financing</u>.    If at any time prior to (x) the
indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and the
DIP Superpriority Claims; and (y) the termination of the DIP Lender's obligation to extend credit
in accordance herewith, any of the Debtors or any trustee or examiner with enlarged powers or any
responsible officer subsequently appointed in any of the Chapter 11 Cases or any successor cases
obtains credit or incurs debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code,
whether or not in violation of the DIP Documents or this Interim Order, then unless otherwise
agreed by the DIP Lender, all of the cash proceeds derived from such credit or debt shall
immediately be turned over to the DIP Lender.

25.    <u>Automatic Effectiveness of Liens</u>. The DIP Liens and the Adequate
Protection Liens shall not be subject to a Challenge and shall attach and become valid, perfected,
binding, enforceable, non-avoidable, and effective liens by operation of law as of the Petition Date
without any further action by the Debtors, the DIP Lender, the Prepetition Agent, or the Prepetition

Lender, respectively, and without the necessity of executing, filing, or recording any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions (including, for the avoidance of doubt, entering into any deposit account control agreement or taking possession of any collateral) to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender, the Prepetition Agent, or the Prepetition Lender the priorities granted herein. Any property or assets or other items of collateral constituting DIP Collateral that are in the possession of or under the control (as defined in the Uniform Commercial Code) of any other party as at the Petition Date shall at all times be held by such party as gratuitous bailee for the benefit of the DIP Lender.

26.    Automatic Stay; Rights and Remedies upon Event of Default. Subject to the terms set forth herein, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order, including, without limitation, to permit: (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform such acts as the DIP Lender may reasonably request, to assure the perfection and priority of the DIP Liens and any other liens granted hereunder; (b) the Debtors to take all appropriate actions necessary to (i) grant the Adequate Protection Liens, the Adequate Protection Claims, and any other liens or claims set forth herein, and (ii) ensure that the Adequate Protection Liens and any other liens granted hereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations to the DIP Lender, the Prepetition Agent, and the Prepetition Lender (as applicable), as contemplated under this Interim Order; (d) the Debtors to pay all amounts required under, in accordance with, and subject to this Interim Order; (e) the DIP Lender and the Prepetition

Agent and the Prepetition Lender to retain and apply payments made in accordance with this Interim Order; (f) subject to the proviso below in this paragraph 26, the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default hereunder or under the DIP Documents, all rights and remedies provided for in the DIP Documents and take any or all actions provided therein, in each case without further notice, motion, application to, order of, or hearing before, this Court; and (g) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order, without further notice, motion, or application to, or order of or hearing before, this Court, subject to the terms of this Interim Order including as to the Remedies Notice Period (as defined below).    Moreover, subject to the provisions of the DIP Documents and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender (or any of its respective agents) to exercise, upon the occurrence and during the continuance of any Event of Default under the DIP Documents, all rights and remedies provided for herein, and to take any or all of the following actions without further notice, motion, or application to, order of, or hearing before, this Court:  (1) immediately terminate the Debtors' rights, if any, under this Interim Order to use Cash Collateral; (2) cease making any DIP Loans to the Debtors (but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations); (3) declare the individual commitments of the DIP Lender to make further DIP Loans to be terminated; (4) declare the unpaid principal amount of all outstanding DIP Loans, all interest accrued and unpaid thereon, and all other DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the Debtors; (5)  freeze monies or balances in the Debtors' accounts; (6) immediately set off any and all amounts in accounts maintained by the Debtors against the DIP

38

Obligations, enforce all rights and remedies against the DIP Collateral for application toward the DIP Obligations, and otherwise proceed to protect or enforce all rights and remedies of the DIP Lender under this Interim Order, any of the other DIP Documents, or applicable law; and (7) take any other actions or exercise any other rights or remedies permitted under this Interim Order or the Final Order, as applicable, the other DIP Documents, or applicable law to effectuate the repayment of the DIP Obligations; provided, however, that prior to the exercise of any right or remedy described in clauses (5), (6) or (7) of this paragraph, the DIP Lender shall provide five (5) business days' written notice of its intent to exercise its rights and remedies to the Debtors, counsel to any Committee, and the U.S. Trustee (the "Remedies Notice Period"). During the Remedies Notice Period, the Debtors shall be entitled to request a hearing on an expedited basis. Unless the Court orders otherwise during the Remedies Notice Period, the automatic stay, as to the DIP Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and, upon expiration of such notice period, the DIP Lender shall be permitted to exercise all rights and remedies set forth in this Interim Order and the other DIP Documents, as applicable, and as otherwise available at law, including, but not limited to, the right to foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by applicable law or equity, without further notice, motion, or application to, order of or hearing before, this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Documents or otherwise. The Debtors and any Committee (solely with respect to the

Committee, subject to entry of the Final Order) shall cooperate with the DIP Lender in its exercise

of their rights and remedies, whether against the DIP Collateral or otherwise, shall not challenge or

raise any objections to the exercise of such rights and shall waive any right to seek relief under the

Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or

impair the rights and remedies of the DIP Lender set forth in this Interim Order and in the DIP

Documents.  For the avoidance of doubt, no party in interest shall have the right to contest the

enforcement of the rights and remedies set forth in this Interim Order or the DIP Documents on

any basis other than an assertion that no Event of Default has occurred and is continuing.  This

Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders

required by the provisions of this paragraph and relating to the application, re-imposition, or

continuance of the automatic stay as provided hereunder.  The delay or failure to exercise rights

and remedies under this Interim Order or any of the other DIP Documents by the DIP Lender shall

not constitute a waiver of the DIP Lender's rights hereunder, thereunder, or otherwise, unless such

waiver is pursuant to a written instrument executed in accordance with the terms of this Interim

Order or any of the other DIP Documents, as applicable.

27.    <u>Third Party Access</u>.  Subject to entry of the Final Order, without

limiting any other rights or remedies of the DIP Lender available at law or in equity, and subject to

the terms of the DIP Documents, upon three (3) business days' written notice to counsel to the

Debtors, counsel to any Committee, any lienholder, licensor, or other third party owner of any

licensed premises or intellectual property, that an Event of Default has occurred and is continuing

under the DIP Documents, the DIP Lender (i) may, unless otherwise expressly provided in any

separate agreement by and between the applicable licensor and the DIP Lender (the terms of which

shall be reasonably acceptable to the parties thereto), enter upon any licensed premises of the

Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Lender shall pay only fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Lender and that accrue during the period of such occupancy or use by DIP Lender calculated on a per diem basis. Nothing herein shall require the Debtors to assume any license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to each of the foregoing in this paragraph.

28.    Maintenance of DIP Collateral.    Unless the DIP Lender otherwise consents in writing, until (x) the indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and (y) the termination of the DIP Lender's obligation to extend credit under the DIP Facilities, the Debtors shall (a) insure the DIP Collateral and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court in accordance with the DIP Documents with the consent of the DIP Lender.

29.    Binding Effect. The provisions of this Interim Order shall inure to the benefit of the Debtors, the DIP Lender, the Prepetition Agent, the Prepetition Lender, and their respective successors and assigns, and shall be binding upon the Debtors, the DIP Lender, the Prepetition Agent, the Prepetition Lender, any Committee, and any and all other creditors of the Debtors or other parties in interest and their successors and assigns, including without limitation,

41

any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11

Cases or in the event of a conversion of any of the Chapter 11 Cases to a case under chapter 7 of

the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.  Further, upon

entry of this Interim Order, the Debtors' stipulations contained herein shall be binding on the

Debtors, and the DIP Obligations shall constitute allowed claims for all purposes in each of the

Chapter 11 Cases.

30.      Survival.  The terms and provisions of this Interim Order and any

actions taken pursuant hereto, including but not limited to the DIP Superpriority Claims, the DIP

Liens, the Adequate Protection Liens, and the Adequate Protection Claims granted pursuant to this

Interim Order, shall survive the entry of any order:  (i) confirming any chapter 11 plan in any of

the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or

(iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order

shall continue in full force and effect notwithstanding the entry of any such order.  Such claims

and liens shall maintain their priority as provided by this Interim Order and to the maximum extent

permitted by law, until all of the DIP Obligations and the Prepetition Secured Obligations are

indefeasibly paid in full in cash and discharged or otherwise treated under a chapter 11 plan.  In no

event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP

Obligations from those set forth in the DIP Documents unless agreed to by and among the Debtors

and the DIP Lender.

31.      Insurance Policies.  Upon entry of this Interim Order, on each

insurance policy maintained by the Debtors which in any way relates to the DIP Collateral: (i) the

DIP Lender shall be, and shall be deemed to be, without any further action by or notice to any

person, named as an additional insured; and (ii) the DIP Lender shall be, and shall be deemed to

42

be, without any further action by or notice to any person, named as a loss payee. The Debtors are

hereby authorized to and shall take any actions necessary to have the DIP Lender added as an

additional insured and loss payee on each insurance policy maintained by the Debtors that in any

way relates to the DIP Collateral.

32.     <u>Protection under Section 364(e) of the Bankruptcy Code</u>.  The DIP

Lender, the Prepetition Agent, and the Prepetition Lender have acted in good faith in connection

with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the

record of these Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code,

if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or

stayed, such reversal, modification, vacation, or stay shall not affect the (i) validity of any DIP

Obligations owing to the DIP Lender, or adequate protection obligations owing to the Prepetition

Agent of the Prepetition Lender, incurred prior to the actual receipt by the DIP Lender or the

Prepetition Agents, as applicable, of written notice of the effective date of such reversal,

modification, vacation, or stay, or (ii) validity or enforceability of any DIP Loans or other

advances previously made or any claim, lien, security interest, or priority authorized or created

hereby or pursuant to this Interim Order with respect to any DIP Obligations owing to the DIP

Lender or any adequate protection obligations owing to the Prepetition Agent or the Prepetition

Lender.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash

Collateral, incurrence of the DIP Obligations, or incurrence of adequate protection obligations by

the Debtors prior to the actual receipt by the DIP Lender, the Prepetition Agent, or the Prepetition

Lender of written notice of the effective date of such reversal, modification, vacation, or stay, shall

be governed in all respects by the provisions of this Interim Order, and the DIP Lender, the

Prepetition Agent, and the Prepetition Lender shall be entitled to all of the rights, remedies,

protections, and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order,

and the other DIP Documents with respect to all uses of Cash Collateral and the incurrence of the

DIP Obligations and adequate protection obligations.

        33.        <u>Effect of Dismissal or Conversion of Chapter 11 Cases</u>.  If the Chapter

11 Cases are dismissed or converted, then such dismissal or conversion shall not affect the rights

of the DIP Lender, the Prepetition Agent, or the Prepetition Lender under their respective DIP

Documents, Prepetition Loan Documents, or this Interim Order, and all of the respective rights and

remedies thereunder of the DIP Lender, the Prepetition Agent, and the Prepetition Lender shall

remain in full force and effect as if the Chapter 11 Cases had not been dismissed or converted.  If

an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in

accordance with sections 105 and 349 of the Bankruptcy Code) that:  (i) the DIP Liens and the DIP

Superpriority Claims granted to and conferred upon the DIP Lender and the protections afforded to

the DIP Lender pursuant to this Interim Order shall continue in full force and effect and shall

maintain their priorities as provided in this Interim Order until all the DIP Obligations shall have

been paid and satisfied in full in cash (and that such DIP Liens, the DIP Superpriority Claims, and

other protections shall, notwithstanding such dismissal, remain binding on all interested parties);

(ii) all Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims

granted to and conferred upon the Prepetition Agent and the Prepetition Lender shall continue in

full force and effect and shall maintain their priorities as provided in this Interim Order until all of

the Prepetition Secured Obligations shall have been paid and satisfied in full in cash (and that such

Adequate Protection Liens and Adequate Protection Claims shall, notwithstanding such dismissal,

remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable

law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of

enforcing the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the

Adequate Protection Claims referred to herein.

34.    <u>Proofs of Claim</u>.    Notwithstanding any order entered by the

Bankruptcy Court in relation to the establishment of a bar date in the Chapter 11 Cases to the

contrary, or otherwise, the DIP Lender, the Prepetition Agent, and the Prepetition Lender shall not

be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein, and the

Debtors' stipulations contained in paragraph D herein shall be deemed to constitute a timely filed

proof of claim against each of the Debtors.

35.    <u>Credit Bidding</u>.    Subject to entry of the Final Order:    (i) the DIP

Lender shall have the right to credit bid as part of any asset sale process and shall have the right to

credit bid the full amount of the DIP Obligations during any sale of the DIP Collateral (in whole or

in part), including without limitation, sales pursuant to section 363 of the Bankruptcy Code or

included as part of any plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the

Bankruptcy Code; and (ii) the Debtors acknowledge that the Prepetition Agent and the Prepetition

Lender shall have the right to credit bid as part of any asset sale process and shall have the right to

credit bid the full amount of their claims, including, for the avoidance of doubt, the Adequate

Protection Claims, if any, during any sale of their Prepetition Collateral, in whole or in part,

including without limitation, sales pursuant to section 363 of the Bankruptcy Code or included as

part of any plan subject to confirmation under section 1129(b)(2)(A)(ii)–(iii) of the Bankruptcy

Code.    The DIP Lender, the Prepetition Agent, and the Prepetition Lender have the absolute right

to assign, transfer, sell, or otherwise dispose of their rights to credit bid.

36.    <u>Rights of Access and Information</u>. The Debtors will provide to the DIP

Lender such reports and information as may be reasonably requested by the DIP Lender, including

without limitation monthly, quarterly, and annual reports, statements, and certificates, as well as

projections, budgets, and the Variance Reports.    In addition, the representatives, advisors,

professionals, consultants, agents, and/or employees of the DIP Lender, the Prepetition Agent, and

the Prepetition Lender shall be afforded reasonable access to the Debtors' premises during normal

business hours and without unreasonable interference with the proper operation of the Debtors'

businesses and their books and records in accordance with this Interim Order and the Prepetition

Loan Documents.

        37.        <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this

Interim Order does not create any rights for the benefit of any third party, creditor, equity holder,

or any direct, indirect, or incidental beneficiary other than the DIP Lender, the Prepetition Agent,

and the Prepetition Lender.

        38.        <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be

construed to constitute a substantive consolidation of any of the Debtors' estates, it being

understood, however, that the Debtors shall be jointly and severally liable for all obligations

hereunder, including without limitation, the DIP Superpriority Claims and the Adequate Protection

Claims.

        39.        <u>Limitations on Liability.</u>  Subject to the entry of the Final Order, in

determining to make extensions of credit under the DIP Facility, permitting the use of Cash

Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim

Order (or any Final Order), the DIP Documents, or the Prepetition Loan Documents, as applicable,

none of the DIP Lender, the Prepetition Agent, or the Prepetition Lender, or any successor of any

of the foregoing, shall be deemed to be in control of the operations of the Debtors or any affiliate

of the Debtors (as defined in section 101(2) of the Bankruptcy Code, "<u>Affiliate</u>"), or to be acting as

a "responsible person" or "owner or operator" with respect to the operation or management of the

Debtors or any Affiliate (as such terms, or any similar terms, are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et*

*seq.*, as amended, or any similar federal or state statute).   Furthermore, nothing in this Interim

Order, the DIP Documents, or the Prepetition Loan Documents shall in any way be construed or

interpreted to impose or allow the imposition upon the DIP Lender, the Prepetition Agent, or the

Prepetition Lender, or any successor of any of the foregoing, of any liability for any claims arising

from the prepetition or postpetition activities of the Debtors or any Affiliate, including any and all

activities by the Debtors in the operation of their business in connection with the Debtors'

restructuring or wind-down efforts.

      40.      <u>Findings of Fact and Conclusions of Law</u>.   This Interim Order

constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be

fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.   The findings

and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions

of law pursuant to Bankruptcy Rule 7052.   To the extent any findings of fact constitute conclusions

of law, they are adopted as such.   To the extent any conclusions of law constitute findings of fact,

they are adopted as such.

      41.      <u>Entry of this Interim Order; Waiver of Stay</u>.   Notwithstanding

Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule or Rule

62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective

and enforceable upon its entry and there shall be no stay of execution or effectiveness of this

Interim Order.

42.        Choice of Law; Jurisdiction.  The DIP Facility and the DIP Documents, including this Interim Order, and the rights and obligations of the parties thereto, shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, including, without limitation, Sections 5-1401 and 5-1402 of the New York General Obligations Law, and, to the extent applicable, the Bankruptcy Code.  The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with the DIP Facility and this Interim Order.

43.        Controlling Effect of Interim Order.  To the extent any provision of this Interim Order conflicts with any provision of the Motion or any DIP Document, the provisions of this Interim Order shall control.

44.        Service.  Service of this Interim Order and notice of the Final Hearing shall be made upon the parties described in paragraph L of this Interim Order, any Committee (if and when it is appointed), and any person who, as of the date hereof, has filed a notice of appearance in the Chapter 11 Cases.

45.        Reservation of Rights of Prepetition Agent and the Prepetition Lender. This Interim Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Agent and the Prepetition Lender to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Chapter 11 Cases, or take any other action in the Chapter 11 Cases and appear and be heard in any matter raised in the Chapter 11 Cases, and (ii) any and all rights, remedies, claims, and causes of action that the Prepetition Agent or the Prepetition Lender may have against any non-Debtor party liable for the Prepetition Obligations.  For all adequate protection and stay relief purposes throughout the Chapter 11 Cases, the Prepetition Agent and the

48

Prepetition Lender shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

46.     <u>Objections</u>. Objections to the entry of the Final Order shall be in writing and shall be filed with the Clerk of this Court, on or before [   ] p.m. (New York time) on [____], 2017, with a copy served upon: (i) counsel to the Debtors, Herrick, Feinstein LLP, 2 Park Avenue, New York, New York 10016 (Attn: Stephen B. Selbst, Esq.); (ii) counsel to the DIP Lender, the Prepetition Agent, and the Prepetition Lender, Cahill Gordon & Reindel LLP, 80 Pine Street, New York, New York 10005 (Attn: Joel H. Levitin, Esq.); (iii) counsel to be selected by the Committee upon its formation if selected by such date; and (iv) the Office of the United States Trustee, [_____] (Attn: [_____]).

47.     <u>Final Hearing</u>. The Final Hearing on the Motion shall be heard before this Court on [_____], 2017 at [____] in Courtroom No. [__] at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

Dated: _____, 2017.      _____
                              [_____]
                              United States Bankruptcy Judge

## EXHIBIT 1

### FORM OF CREDIT NOTE

FOR VALUE RECEIVED, the undersigned (each, a "Debtor" and, collectively, the "Debtors"), hereby promise to pay to FALCON STRATEGIC PARTNERS IV, LP or registered assigns (as hereinafter defined) (the "DIP Lender"), in accordance with the provisions of the Interim Order, the principal amount of each DIP Loan from time to time made by the DIP Lender to the Debtors under that certain Interim Order.

Each Debtor jointly and severally promises to pay interest on the unpaid principal amount of each DIP Loan from the date of such DIP Loan until such principal amount is paid in full, at such interest rates and at such times as provided in the Interim Order. All payments of principal and interest shall be made to the DIP Lender in United States Dollars in immediately available funds at the DIP Lender's office. If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest, to be paid upon demand, from the due date thereof until the date of actual payment computed at the per annum rate set forth in the DIP Order.

This Credit Note is one of the Credit Notes referred to in the Interim Oder, is entitled to the benefits thereof and may be prepaid in whole or in part subject to the terms and conditions provided therein. This Credit Note is also entitled to the benefits of the DIP Collateral. If one or more of the Events of Default specified in the Interim Oder occurs and is continuing, all amounts then remaining unpaid on this Credit Note shall become under certain circumstances, or may be declared to be, immediately due and payable all as provided in the Interim Order. DIP Loans made by the DIP Lender shall be evidenced by one or more loan accounts or records maintained by the DIP Lender in the ordinary course of business. The DIP Lender may also attach schedules to this Credit Note and endorse thereon the date, amount and maturity of its DIP Loans and payments with respect thereto.

Each Debtor, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Credit Note.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

**DEBTORS**:

NATIONAL EVENTS INTERMEDIATE, LLC

By: _____
Name:
Title:

NATIONAL EVENTS HOLDINGS, LLC

By: _____
Name:
Title:

NATIONAL EVENT COMPANY II, LLC

By: _____
Name:
Title:

NATIONAL EVENT COMPANY III, LLC

By: _____
Name:
Title:

WORLD EVENTS GROUP II, LLC

1.      By: _____

Name:
Title:

51

### DIP LOANS AND PAYMENTS PAYMENT WITH RESPECT THERETO

| Date | Amount of DIP Loan Made | Amount of Principal or Interest Paid This Date | Outstanding Principal Balance This Date | Notation Made by |
|------|------|------|------|------|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

## **EXHIBIT 2**

**BUDGET**

**National Event Company II, LLC**
**DIP Budget**
**June - September 2017**

| | 1 Week of 06/03 -06/09 | 2 Week of 06/10 -06/16 | 3 Week of 06/17 -06/23 | 4 Week of 06/24 -06/30 | 5 Week of 07/01 -07/07 | 6 Week of 07/08 -07/14 | 7 Week of 07/15 -07/21 | 8 Week of 07/22 -07/28 | 9 Week of 07/29 -08/05 | 10 Week of 08/06 -08/12 | 11 Week of 08/13 -08/19 | 12 Week of 08/20 -08/26 | 13 Week of 08/27 -09/02 | 14 Out Week | Total 14 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash Balance | 53,848 | 125,223 | 380,295 | 783,382 | 1,148,279 | 1,650,543 | 2,175,351 | 2,682,562 | 3,332,276 | 3,949,586 | 4,510,719 | 4,850,635 | 5,027,724 | 4,967,060 | 5,027,724 |
| **Inflows** | | | | | | | | | | | | | | | |
| Receipts on Ticket Exchanges AR | 17,790 | 13,996 | 15,779 | 6,324 | | | | | | | | | | | 138,636 |
| Forecasted Receipts on Inventory Liquidation-25% of Value | 68,750 | 93,750 | 91,933 | 25,000 | 25,000 | 34,515 | | | | | | | | | 338,948 |
| Receipts on Suspect Broker Receivables -10% Recoverable | | | 169,532 | 226,042 | 282,553 | 339,063 | 339,063 | 395,574 | 395,574 | 339,063 | 226,042 | 113,021 | | | 2,938,546 |
| Forecasted Receipts on Suspect Inventory Liquidation-25% Recoverable | | | 125,926 | 167,902 | 209,877 | 251,853 | 251,853 | 293,828 | 293,828 | 251,853 | 167,902 | 83,951 | | | 2,182,726 |
| Falcon DIP Loan Proceeds | | | | | | | | | | | | | | | 108,572 |
| Sale of 40% stake Concierge Live LLC | | | | | | | | | | | | | | | - |
| Sale of 40% stake Winter Music Festivals LLC | | | | | | | | | | | | | | | - |
| Sale of FF&E | | | | | | | | | | | | | | | - |
| **Total Inflows** | 86,540 | 304,678 | 403,169 | 425,268 | 517,430 | 625,431 | 590,916 | 689,402 | 689,402 | 590,916 | 393,944 | 196,972 | - | - | 5,707,418 |
| **Outflows** | | | | | | | | | | | | | | | |
| **Operating Costs** | | | | | | | | | | | | | | | |
| Compensation and Benefits: | | | | | | | | | | | | | | | |
| Pre-petition Payroll due | | | | | | | | | | | | | | | |
| Finance (3) | | 20,205 | | 20,205 | | | 20,205 | | 20,205 | | 20,205 | | 20,205 | | 121,230 |
| Sales & Customer staff (3) | | 21,065 | | 21,065 | | | 21,065 | | | | | | | | 63,194 |
| IT contractor | | | | 900 | | | | | 300 | | | | 300 | | 1,500 |
| Paid time off (PTO) payment at termination | | | | | | | | | 2,000 | | | | 1,500 | | 19,341 |
| Health and dental insurance | | | | 8,071 | | | | 8,071 | | | | | 2,619 | | 21,065 |
| D&O policy 5yr tail | | | | | | | | | | | | | | 50,000 | 50,000 |
| **Total Compensation and Benefits** | - | 41,270 | - | 50,241 | - | - | 41,270 | 8,071 | 22,505 | - | 20,205 | - | 24,624 | 50,000 | 289,895 |
| **Occupancy** | | | | | | | | | | | | | | | |
| Rent | 11,712 | | | | 11,712 | | | | 11,712 | | | | 11,712 | | 46,848 |
| Telephone/Utilities/Alarm | 2,000 | | | | 2,000 | | | | 2,000 | | | | 2,000 | | 8,000 |
| Cleaning | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | 75 | | 975 |
| 10% Contingency/Pre-Petition cash reconciliation | 1,379 | 8,261 | 8 | 10,056 | 1,379 | 8 | 8,261 | 1,622 | 5,680 | 8 | 4,049 | 8 | 6,303 | | 52,135 |
| **Total Operating Outflows** | 15,166 | 49,606 | 83 | 60,372 | 15,166 | 83 | 49,606 | 9,768 | 42,172 | 83 | 24,329 | 83 | 44,714 | 50,000 | 397,852 |
| **Bankruptcy Costs** | | | | | | | | | | | | | | | |
| DIP Loan Interest | | | | | | | | | | | | | | | |
| Herrick Legal Fees | | | | | | | | | | | | | | | |
| Bank Legal Fees | | | | | | | | | | | | | | | |
| RAS Management Fees | | | | | | 91,400 | 31,000 | 27,200 | 27,200 | 27,000 | 27,000 | 18,000 | 14,500 | 11,000 | 303,500 |
| Committee Professional Fees | | | | | | | | | | | | | | 200,000 | 382,872 |
| U.S. Trustee Fees | | | | | | | | | | | | | | 150,000 | 150,000 |
| Noticing Agent | | | | | | | | | | | 15,000 | 15,000 | | | 150,000 |
| Utility Deposits/Other | | | | | | | | | | | | | | 25,000 | 25,000 |
| Avant Advisory retainer and estimated fees | | | | | | | | | | | | | | | |
| 10% Contingency | | | | | | | 3,100 | 2,720 | 2,720 | 2,700 | 2,700 | 1,800 | 1,450 | | 26,330 |
| **Total Bankruptcy Expense Outflows** | - | - | - | - | - | 100,540 | 34,100 | 29,920 | 29,920 | 29,700 | 29,700 | 19,800 | 15,950 | 401,000 | 902,702 |
| **Total Outflows** | 15,166 | 49,606 | 83 | 60,372 | 15,166 | 100,623 | 83,706 | 39,688 | 72,092 | 29,783 | 54,029 | 19,883 | 60,664 | 451,000 | 1,300,554 |
| **Net Inflows over (Outflows)** | 71,375 | 255,072 | 403,087 | 364,897 | 502,264 | 524,809 | 507,210 | 649,714 | 617,310 | 561,134 | 339,916 | 177,090 | (60,664) | (451,000) | 4,406,863 |
| **Ending Cash Balance** | 125,223 | 380,295 | 783,382 | 1,148,279 | 1,650,543 | 2,175,351 | 2,682,562 | 3,332,276 | 3,949,586 | 4,510,719 | 4,850,635 | 5,027,724 | 4,967,060 | 4,516,060 | 4,516,060 |

# NECO PROFESSIONAL
## FEE ACCRUAL SCHEDULE

### re: National Events
### RAS MANAGEMENT ADVISORS LLC (CRO)
### FEE ESTIMATE

| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | OUT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fees/Exp | $34,800 | $32,900 | $32,900 | $32,900 | $32,900 | $31,000 | $27,200 | $27,200 | $27,000 | $27,000 | $18,000 | $14,500 | $11,000 | 10,000 | 359,300 |
| Total Fees/Exp | 34,800 | 32,900 | 32,900 | 32,900 | 32,900 | 31,000 | 27,200 | 27,000 | 27,000 | 18,000 | 14,500 | 11,000 | 10,000 | | 359,300 |

Timing of Payments: week 6: 91,400; week 7: $31,000; week 8: $27,200; week 12: $18,000; week 13: $14,500; OUT: $11,000

### re: National Events
### HERRICK (DEBTOR COUNSEL)
### FEE ESTIMATE

| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | OUT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fees | 25,000 | 25,000 | 25,000 | 25,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 200,000 |
| Total Fees | 25,000 | 25,000 | 25,000 | 25,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 200,000 |

Timing of Payments: 200,000

### re: National Events
### COMMITTEE COUNSEL
### FEE ESTIMATE

| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | OUT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fees | - | - | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 75,000 |
| Total Fees | - | - | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 75,000 |

** assumes retention in week 3

Timing of Payments: 75,000

### re: National Events
### COMMITTEE FINANCIAL ADVISOR
### FEE ESTIMATE

| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | OUT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fees | - | - | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 75,000 |
| Total Fees | - | - | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 75,000 |

** assumes retention in week 3

Timing of Payments: 75,000

### re: National Events
### NOTICING AGENT
### FEE ESTIMATE

| WEEK | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | OUT | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fees | - | - | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 25,000 |
| Total Fees | - | - | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 25,000 |

** assumes retention in week 3

Timing of Payments: 25,000