UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                              Chapter 11

NATIONAL EVENTS HOLDINGS, LLC,                     Case No. 17-11556 (JLG)
et al.,[1]
                                                   (Motion for Joint Administration Pending)
            Debtors.
------------------------------------------------------------x

## DECLARATION OF TIMOTHY PUOPOLO
## IN SUPPORT OF FIRST DAY MOTIONS

Timothy Puopolo hereby declares under penalty of perjury that the following is true and correct:

1.  I am the Chief Restructuring Officer ("CRO") of National Events Holdings, LLC, a Delaware limited liability company, the above-captioned debtor and debtor-in-possession ("NEH" or the "Debtor," and together with its affiliated debtors, the "Debtors"). I have served in this position since May 11, 2017. I am a Member of RAS Management Advisors, LLC ("RAS"), a turnaround and crisis management firm. I have more than 15 years of experience in the restructuring business.

2.  The senior management of RAS has been engaged by domestic and international companies ranging in size from $10 million in annual revenue to over $1 billion in annual revenue. RAS's consultants average over 25 years of hands-on experience in senior management positions, including those of CEO, President, COO, CFO, Partner, or VP of Manufacturing. As CRO, I am responsible for oversight of all aspects of the Debtor's operations.

---

[1] The last four numbers of each Debtor's taxpayer identification number are National Events Holdings, LLC (7314); National Events Intermediate, LLC (0566); National Event Company II, LLC (6663); National Event Company III, LLC (7592); and World Events Group II, LLC (9429). The Debtors' address is 1430 Broadway, 7th Floor, New York, New York 10018.

3. The Debtor has requested various types of "first day" relief by motions that are typically heard on the first day of a chapter 11 case, as well as motions that are heard subsequently (collectively, the "First Day Motions"). Each First Day Motion seeks relief intended to allow the Debtor to perform and meet those obligations necessary to fulfill its duties as a debtor-in-possession in its chapter 11 case. As set forth below, I am generally familiar with the contents of each First Day Motion and believe that the relief sought in each First Day Motion is necessary to enable the Debtor to operate in bankruptcy with minimum disruption or loss of productivity or value and best serves the interests of the Debtors' creditors, customers, employees, and other stakeholders.

4. I submit this declaration in support of the Debtors' chapter 11 petitions and the relief requested in the First Day Motions, and to provide general information to the Court regarding the Debtors' intended strategy in these chapter 11 cases. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by my colleagues and the Debtors' employees, and from my review of relevant documents, or otherwise upon my opinion based upon my experience, my discussions with the Debtors' advisors and my knowledge of the Debtors' business and financial condition.

## THE DEBTORS' BUSINESS

5. The Debtors operate together a ticket broker and wholesale distributor of tickets for sporting and theatrical events that was formed in 2006. The Debtors provide ticketing services for all concert, theater and sporting event tickets, as well as various V.I.P. hospitality packages that deliver exclusive access to big name events, including hotels, celebrity meet and greets and exclusive parties.

6. NEH, the parent company of the Debtors, is privately-owned and there are no publicly-traded securities. The equity interests in NEH are held as follows: Falcon Strategic

2

Partners IV, LP, 24%; National Events of America, Inc. 75%, and New World Events Group, Inc. 1%. National Events of America, Inc., and New World Events Group, Inc. are owned, on information and belief, by Jason Nissen, who is described below.

## THE DEBTORS' CAPITAL STRUCTURE, AND CIRCUMSTANCES LEADING TO THE CHAPTER 11 FILING

### A.    Debtors' Capital Structure

7.    NEH is a holding company that owns one hundred percent (100%) of the membership interests in National Events Intermediate, LLC, a Delaware limited liability company ("NEI"). Pursuant to that certain Purchase Agreement dated as of July 6, 2015, among NEI, National Events Holdings, LLC, the Guarantors Party Thereto, Jason Nissen, the Purchasers Party Thereto, and FMP Agency Services, LLC, as Agent, NEI issued (a) $25,000,000 in principal amount of its 11% Senior Secured Notes due July 6, 2020 (the "Senior Notes"), and (b) $15,000,000 of its 8% Senior Unsecured PIK Notes due July 6, 2022 (the "PIK Notes" and together with the Senior Notes, the "Falcon Notes") to Falcon Strategic Partners IV, LP as Purchaser ("Falcon").

8.    The Senior Notes are secured by a first lien and security interest in and to substantially all of the assets of the Debtors. The Falcon Notes are guaranteed by the Debtor, and National Event Company II, LLC, a Delaware limited liability company, National Event Company III, LLC, a Delaware limited liability company, and World Events Group II, LLC, a Delaware limited liability company, all of which are subsidiaries of NEI. The PIK Notes are not secured.

9.    In addition, on or about April 11, 2017, NEI issued to Falcon that certain Senior Secured Note, Series B, in the principal amount of $4,000,000, which is secured by the same

collateral that secures the Senior Notes. On or about June 5, 2017, NEI issued to Falcon that certain Senior Secured Note, Series C, in the principal amount of $108,527.

### B.  Events Leading to Chapter 11

10.  On May 31, 2017, Jason Nissen ("Nissen"), the former chief executive officer of the Debtor, was arrested and charged by the Federal Bureau of Investigation (the "FBI") with allegedly defrauding victims of at least $70 million through what the FBI characterized as a Ponzi scheme. According to the complaint filed in the United States District Court for the Southern District of New York (the "Complaint"), Nissen "represented to victims that he would use money lent to him and his companies by victims to purchase bulk quantities of premium tickets to sporting and entertainment events...However...Nissen used the victims' money in large part to repay other victims and enrich himself."

11.  According to the Complaint, to perpetuate his fraud, Nissen presented to his victims falsified financial documents and inflated accounts receivable ledgers as purported proof that their money was being used to purchase tickets for resale.

12.  The Complaint further alleges that on or about May 7, 2017, Nissen admitted to one of his victims that he had been operating a Ponzi scheme, and that on May 10, 2017 he made a similar acknowledgement to another victim.

13.  The Debtors learned of Nissen's fraudulent activities on or about May 10, 2017. Nissen was terminated on that date and on May 11, 2017, the Board of Managers of the Debtor retained RAS to provide my services as CRO.

14.  Since RAS has been retained, my principal activities have consisted of (1) liquidating the Debtors' inventory of saleable tickets, (2) reducing operating expenses to a bare minimum, (3) ensuring the integrity of the Debtors' remaining assets, and (4) investigating potential assets and recoveries, such as amounts due from counterparties.

4

15. Nissen's fraud is still the subject of a continuing criminal investigation by the United States Attorney for the Southern District of New York (the "US Attorney Investigation"). Since May 10, 2017, the Debtors have fully cooperated with the US Attorney Investigation by responding to subpoenas that have been issued, providing information and responding to inquiries. Because the US Attorney Investigation has not concluded, the Debtors have continuing response obligations.

C.  **Wind Down of Operations**

16. As indicated above, the Debtors are well along in the process of winding down operations. As of June 2, 2017, the Debtors have reduced its full-time staff to six persons, most of whom are primarily or exclusively involved in the financial side of the business. In May 2017 the Debtor has closed its Hollywood, California office and it has deactivated its website.

17. As indicated above, the Debtor is now concentrating on disposing of its remaining ticket inventory and pursuing its accounts receivable. The last remaining event for which the Debtor anticipates material sales of tickets is the 2017 US Open. The Debtor has previously purchased a substantial bloc of tickets for this popular Grand Slam tennis event, and anticipates being able to resell those tickets at a profit. The Debtor also owns a 40% interest in Concierge Live, LLC, a ticket management software company, and a 50% interest in Winter Music Festivals LLC, a company that produces concert events. The Debtor is currently evaluating the best methods for maximizing the value of those assets.

D.  **DIP Loan**

18. Falcon has also agreed to make a debtor-in-possession loan (the "DIP Loan") in the amount of $485,000 to the Debtor. The DIP Loan is intended to provide the Debtor with adequate liquidity to meet all of its post-petition obligations for at least 13 weeks, including all administrative expenses accrued as of said date. The Debtor likewise views the willingness of

5

Falcon as DIP lender to extend debtor-in-possession financing to the Debtor as an important statement of its commitment to and confidence in the Debtors' reorganization efforts.

### E. Plan of Liquidation

19. The Debtor anticipates that it will file a liquidating plan of reorganization that will pay creditors in accordance with their statutory priorities. Given the uncertainties regarding the extent of Nissen's fraud, and the recoverability of amounts recorded as accounts receivable on the Debtors' books and records, the Debtor is not in a position to provide guidance on what level of recoveries may be received by creditors.

## FIRST DAY MOTIONS

20. To minimize the adverse effects of the commencement of the chapter 11 case on its business and employees, the Debtor has requested various types of relief in its First Day Motions, all of which are either being filed concurrently with this Declaration, or will be filed shortly after the Petition Date. I believe that the relief requested in each of the First Day Motions is necessary, appropriate, and is in the best interest of the Debtors' estates, creditors, and other parties in interest.

21. The First Day Motions are:

- Motion for Joint Administration

- Motion Pursuant to Bankruptcy Rules 1007(C) and 2002(D) for an Extension of Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs

- Motion for Order Authorizing Maintenance of Prepetition Cash Management System, Bank Accounts and Continued Use of Existing Business Forms, and Granting Related Relief

- Motion for Entry of Interim and Final Orders (I) Authorizing Debtor in Possession to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364; (II) Granting Liens, Security Interests and Superpriority Claims; (III) Authorizing Use of Cash Collateral and Granting Adequate

        Protection; (IV) Modifying the Automatic Stay; and (V) Scheduling a Final Hearing

22.    I have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) listed above, and, to the best of my knowledge, I believe that the facts set forth in the First Day Motions are true and correct. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

23.    Furthermore, as a result of my personal knowledge, information supplied to me by other members of the Debtors' management, from my review of relevant documents, or upon my opinion based upon my experience, discussions with the Debtors' advisors and knowledge of the Debtors' operations and financial condition, I believe the relief sought in the First Day Motions is necessary for the Debtor to effectuate a smooth transition into chapter 11 bankruptcy, and is in the best interests of the Debtors' creditors, estates, and other stakeholders.

24.    Accordingly, for the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of this case, I believe that the relief sought in the First Day Motions should be granted by the Court in its entirety, together with such other and further relief for the Debtor as this Court deems just and proper, in the most expeditious manner possible.

Dated June 5, 2017

                                                    */s/ Timothy Puopolo*
                                                 Name: Timothy Puopolo
                                                 Title:  Chief Restructuring Officer