**ALSTON & BIRD**
*Counsel for Hutton Ventures LLC*
Gerard S. Catalanello
James J. Vincequerra
90 Park Avenue
New York, New York 10016
Telephone: 212-210-9400
Fax: 212-210-9444

*-and-*

**MORRISON COHEN LLP**
*Counsel for the Taly USA Holdings, Inc. and SLL USA Holdings LLC*
Joseph T. Moldovan
Robert K. Dakis
909 Third Avenue
New York, NY 10022
Telephone:  212-735-8603
Facsimile:   917- 522-3103

UNITED STATES BANKRTUPCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| NATIONAL EVENTS HOLDINGS, LLC, *et al.*,[1] | Case No. 17-11556 (JLG) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------------x

### JOINT OPPOSITION OF HUTTON VENTURES, LLC, TALY USA HOLDINGS INC., AND SLL USA HOLDINGS, LLC, TO THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF FMP AGENCY SERVICES, LLC, AND FALCON STRATEGIC PARTNERS IV, LP

Hutton Ventures LLC ("**Hutton**"), Taly USA Holdings Inc. ("**Taly**") and SLL USA Holdings, LLC ("**SLL**," together with Taly and Hutton, the "**Opposing Creditors**"), hereby file

---

[1] The last four numbers of each debtor's taxpayer identification number are National Events Holdings, LLC (7314); National Events Intermediate, LLC (0566); National Event Company II, LLC (6663); National Event Company III, LLC (7592); and World Events Group II, LLC (9429). The Debtors' address is 1430 Broadway, 7th Floor, New York, New York 10018.

{N3396408.2}

this joint opposition (the "**Opposition**") to the Motion for Relief from the Automatic Stay (the "**Stay Relief Motion**")[2] [Doc. No. 24] filed by FMP Agency Services ("**FMP**") and Falcon Strategic Partners IV, LP ("**Falcon**," together with FMP the "**Movants**"), pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**"), and in connection therewith, respectfully represent as follows:

## I. PRELIMINARY STATEMENT

1. The Stay Relief Motion is a thinly veiled attempt to get by force the very relief this Court previously denied. To put the Stay Relief Motion into context, it is important to recognize that Falcon, the purportedly secured creditor, owned 24% of the Debtors and consisted of half of the voting members of the Debtors' board of managers during the lead up to the filing of these cases. On June 9, 2017, this Court held a hearing in connection with various "first day" applications and motions filed in these cases, including a motion seeking approval of certain debtor-in-possession financing proposed by Falcon ("**DIP Motion**"). During that hearing, the Court entertained discussion and argument by and with many parties in attendance and thereafter correctly concluded that the terms of the DIP Motion -- which included a number of material benefits for Falcon such as acknowledgement of the extent and validity of Falcon's alleged liens, a release of estate claims against Falcon, a carve-out under section 506(c) of the Bankruptcy Code and a paltry budget for a committee to investigate Falcon's pre-petition claims and alleged liens -- were extraordinary and totally inappropriate at this early juncture of these cases.

2. As such, the Court refused to approve the DIP Motion, directed the parties to return on June 16th and strongly suggested that everyone continue discussions to determine the best path forward to maximize value for creditors under these very difficult circumstances. The

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Stay Relief Motion.

- 2 -

majority of stakeholders in this case took the Court's opportunity to heart. Shortly following the June 9th hearing, and following the Court's directive, counsel for Taly and Hutton proposed a meeting with all of the parties for the purpose of discussing a framework to protect and preserve this "melting ice cube" while, at the same time, maintaining a certain *status quo* so that no victim of this massive fraud would be able to unfairly "jump ahead of the line" or otherwise be afforded special treatment to the detriment of all other creditors.

3.    A meeting was set for June 13th at counsel for Taly's offices. All of the parties who appeared before the Court at the June 9th hearing attended the meeting on June 13th with one notable exception – Falcon. Indeed, rather than attend the meeting to discuss a path forward with counsel for the Debtors, the state court receiver and its counsel, counsel for Taly, counsel for Hutton and counsel for various employees, Falcon directed its counsel to remain at his office to dedicate his time and effort to drafting the Stay Relief Motion, which Motion was filed by the Movants the very next day.

4.    The Stay Relief Motion, of course, seeks relief even more extraordinary than the DIP Motion that the Court refused to approve about ten days (10) ago. In fact, if granted, the Stay Relief Motion would permit Falcon to not only "jump ahead of the line" but, more importantly, take dominion and control over the only known tangible asset of these estates – the ticket inventory. If permitted to do so, Falcon would be entitled to retain all of the proceeds of the ticket sales solely for its benefit notwithstanding that **no** investigation as to the extent, validity and/or priority of Falcon's supposed liens has begun, let alone finished.

5.    Not only is the relief extraordinary, but Falcon likewise fails to offer a single justification for such relief at this very early stage of these cases. Missing from the Stay Relief Motion is any discussion regarding the "change of heart" that Falcon has evidently experienced

since the June 9th hearing when its counsel stood before the Court and argued strenuously for the approval of the DIP Motion. Falcon further makes no mention of the fact that it was half the Debtor's board at the time the Debtor "agreed" to the DIP Motion, and the releases and admissions set forth therein. Through the artifice of the DIP Motion, Falcon attempted to convince the Court that the proposed financing terms were not an aggressive ask by a creditor with some level of taint, but were instead necessary to enable the debtors to liquidate their ticket inventory in an orderly fashion. Those arguments were unsuccessful and now, a few days later, Falcon comes to the Court seeking an order permitting it to seize its purported collateral knowing full well that any such relief would effectively destroy the debtors' (or committee's) ability to conduct a fulsome investigation, market their assets and otherwise implement a process to protect and preserve the assets for the benefit of all creditors.

6. Simply put, it may turn out that Falcon is a victim of this massive fraud, but it is certainly not the only victim. To allow Falcon such relief now would be grossly unfair to Taly, Hutton, the employees, and all other victims who hold substantial claims in these cases.

7. For these reasons, all of which are more fully addressed below, the Opposing Creditors respectfully submit that the Court should deny the Stay Relief Motion.

## II. RELEVANT BACKGROUND

8. On June 5, 2017 (the "**Petition Date**"), National Events Holdings, LLC, National Events Intermediate, LLC, National Event Company II, LLC, National Event Company III, LLC, and World Events Group II, LLC (collectively, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to manage their respective properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and

1108, although they have no material ongoing operations other than liquidating their remaining tangible assets.

9.  Prior to the Petition Date, Hutton made loan advances to non-debtors National Events of America Inc. ("**NEA**") and Jason Nissen ("**Nissen**") pursuant to a loan and credit agreement, promissory note, and related stock pledge agreement. As of the Petition Date, Hutton was owed approximately $10 million on account of such loan advances. Based upon the facts and circumstances described in the Government's complaint leading to the arrest of Nissen, as well as the pleadings filed by Taly in state court requesting the appointment of a receiver, monies were transferred between and among NEA, Nissen and the Debtors as part of an overall fraud that injured Hutton and many other victims. As such, Hutton believes that it has substantial claims in these cases.

10.  Prior to the Petition Date, Taly and SLL likewise made a series of event-specific investments with NEA. Some of these investments were made through a combination of new money from Taly and SLL plus the Debtors' rolling forward of amounts owed to Taly or SLL under previous investments. As of the Petition Date, Taly and SLL were owed approximately $16 million on account of such investments. Each of these investments was evidenced by a writing signed by Nissen on behalf of NEA. As with Hutton, Taly and SLL believe that they hold substantial claims in these cases.

11.  Falcon alleges that it is owed approximately $29 million on account of secured loans, and approximately $15 million on account of unsecured loans made to the Debtors prior to the Petition Date. Importantly, there is no dispute that, pursuant to the various transactions entered into between Falcon and the Debtors, since 2015 Falcon has owned a twenty-four percent (24%) membership interest in National Events Holdings, LLC ("**Holdings**"), one of the

Debtors herein. Further, there is no dispute that, since 2015, Falcon has been a member of Holdings' Board of Managers and, pursuant to the documents evidencing its various investments, has had significant control over material decisions made by Holdings (and therefore all of the lower-tiered Debtors). Significantly, immediately prior to the Petition Date, there were only two (2) members of the Board of Managers of Holdings – Falcon and the Debtor's Chief Financial Officer. That Board made a number of critical decisions regarding operations, liquidation of inventory and the decision to file these cases and seek approval of the DIP Motion described above.

12. On June 5, 2017, only hours before Falcon directed the Debtors to file their voluntary chapter 11 petitions in this Court, upon motion made by Taly, Justice O. Peter Sherwood entered an order appointing Edward LoBello, Esq. as the receiver (the "**Receiver**") of NEA and New World Events Group Inc. ("**NWG**") and, in connection therewith, granted the Receiver broad rights and powers over NEA and NWG, as well as the affiliated Debtors. Included in the rights and powers afforded to the Receiver is the authority to file chapter 11 petitions for NEA, NWG and all of the Debtors.

### III. THE STAY RELIEF MOTION SHOULD BE DENIED

13. In the Stay Relief Motion, the Movants seek relief from stay "to allow them to take any and all action under applicable state law to take possession of and liquidate any collateral." Stay Relief Motion, at ¶24. The Movants further allege that the Debtors granted to FMP, on behalf of Falcon, "security interests in and liens upon all 'Collateral'" as defined in Falcon's loan documents. Stay Relief Motion, at ¶14.

14. "The purpose of the automatic stay is 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts…the

stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.'" *In re Fidelity Mortgage Investors* (*Fidelity Mortgage Investors v. Camelia Builders, Inc.*), 550 F.2d 47, 55 (2d Cir.1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), *quoted in In re Colonial Realty Co.*, 980 F.2d 125, 133 (C.A.2 (Conn.), 1992).

15. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the automatics stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause," but courts are guided by the factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir.1990):

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286.

16. Not every *Sonnax* factor will be relevant in every case, and therefore the Court may assign a different weight to each factor. *In re SunEdison, Inc.*, 557 B.R. 303, 307–08 (Bkrtcy.S.D.N.Y., 2016). Moreover, as a general principle, the decision to lift the bankruptcy stay under section 362(d) is within the discretion of the bankruptcy court "and is to be

determined by examining the totality of the circumstances. *See In re Colonial Center, Inc.,* 156 B.R. 452, 459 (Bkrtcy. E.D. Pa. 1993).

17. Here, there can be no serious dispute that application of the *Sonnax* factors demonstrates that the Court should deny the Stay Relief Motion.

18. First, and as a fundamental matter, these cases does not involve the typical secured creditor who holds an undisputed secured claim and seeks relief to foreclose on its collateral during a chapter 11 case. On the contrary, and as noted above, Falcon's involvement with the Debtors prior to the Petition Date raises a number of serious questions regarding, among other things, (i) the true nature of Falcon's investments in the Debtors; (ii) the extent to which Falcon exercised dominion and control over the Debtors' operations prior to the Petition Date as it was permitted to do under the Holdings' Operating Agreement; and (iii) the involvement of Falcon and/or any of its agents and representatives in the fraudulent scheme described in the Government's complaint, other pleadings filed in these cases and in the state court action giving rise to the appointment of the Receiver. As noted above, since 2015 Falcon has enjoyed the benefits of (i) owning a twenty-four percent (24%) membership interest in Holdings, (ii) a position on Holdings' Board of Managers, and (iii) control rights over material business decisions. While Falcon may very well be a victim of this massive fraud like Taly and Hutton, there can be no doubt that Falcon will be at the center of the investigation that needs to be conducted by the Receiver, a committee or some other estate fiduciary.

19. Second, these cases were filed merely two (2) weeks ago. No investigation has been conducted by any independent party regarding the extent, validity, and priority of Falcon's alleged liens. That Falcon alleges that it holds a valid secured claim is of no moment under these circumstances. Given the magnitude of the fraud described to this Court, justice requires the

- 8 -

guiding hand of an independent fiduciary to have an appropriate amount of time to conduct a fulsome investigation before Falcon is entitled to seize its purposed collateral.

20. Falcon's claims of a lack of adequate protection further lack merit. In order for a creditor to even be entitled to adequate protection, the creditor must show there is a diminution in the value of its collateral. *In re Cason*, 190 B.R. 917, 928 (Bankr. N.D. Ala. 1995), The Debtors' only tangible asset is an inventory of tickets for events that will occur between now and September. Falcon has made no showing that the value of the tickets that, according to the budget created by the Debtors and blessed by Falcon already includes appropriate discounts for the risk of non-sale, is diminishing. Moreover, the estate will not be able to use any of the cash proceeds absent relief from the Court under section 506(c), and therefore the liquidation of the tickets for their actual value does not in any way cause a diminution in that value.

21. Last, Falcon has not, because it cannot, demonstrated that the relief it requests must be granted at this early juncture of the cases. As noted above, less than two (2) weeks ago Falcon sought the approval of the DIP Motion to enable the Debtors to liquidate in chapter 11 in an orderly fashion. Neither the DIP Motion nor the Stay Relief Motion legitimately explains the reasons for Falcon's quick "change of heart" that would justify such drastic relief today. Lifting the automatic stay to allow Falcon to gobble-up the entirety of the Debtors' tangible assets based on unverified security interests would result in significant and unnecessary harm to all of the Debtors' creditors. On the contrary, allowing the Debtors' estates to liquidate these tickets without the threat of foreclosure by Falcon would result in greater recoveries for all creditors including Falcon if, and to the extent, it is ultimately concluded that Falcon holds a valid secured claim in these cases and had no advance knowledge of the fraud.

22.     For these reasons, the Opposing Creditors respectfully submit that the Stay Relief Motion should be denied.

DATED:  June 19, 2017

**ALSTON & BIRD**

/s/ Gerard S.Catalanello
Gerard S. Catalanello
James J. Vincequerra
90 Park Avenue
New York, New York 10016
Telephone: 212-210-9400
Fax: 212-210-9444

*Counsel for Hutton Ventures LLC*

-and-

**MORRISON COHEN LLP**

/s/ Robert Dakis
Joseph T. Moldovan
Robert K. Dakis
909 Third Avenue
New York, NY 10022
Telephone:  (212) 735-8603
Facsimile:  (917) 522-3103

*Attorneys for the Taly USA Holdings, Inc
and SLL USA Holdings LLC*