HERRICK, FEINSTEIN LLP
*Attorneys for the Debtors and Debtors in Possession*
Stephen B. Selbst
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com

**Hearing Date:**
**July 17, 2017**
**Hearing Time:**
**11:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re                                                                              Chapter 11

NATIONAL EVENTS HOLDINGS, LLC, *et al[1].,*          Case No. 17-11556 (JLG)

                                                                                   (Jointly Administered)
              Debtors.

------------------------------------------------------------X

## DEBTORS' OBJECTION TO MOTION OF THE UNITED STATES TRUSTEE FOR ORDER CONVERTING THE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7

The above-captioned debtors (the "Debtors"), by their counsel, Herrick, Feinstein LLP, hereby file their objection (the "Objection") before this Court to Motion of the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), dated June 28, 2017 [ECF 65] (the "Conversion Motion"), for entry of an order converting the Debtors' chapter 11 cases to cases under Chapter 7 pursuant to 11 U.S.C. § 1112(b). In support of their Objection, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT

1.       The Conversion Motion filed by the US Trustee seeks, very early in these Chapter 11 Cases, to oust the Debtors from conducting an orderly liquidation of their estates' assets and

---

[1] The last four numbers of each Debtor's taxpayer identification number are National Events Holdings, LLC (7314); National Events Intermediate, LLC (0566); National Event Company II, LLC (6663); National Event Company III, LLC (7592); and World Events Group II, LLC (9429). The Debtors' address is 1430 Broadway, 7th Floor, New York, New York 10018.

HF 11569153v.1 #18887/0002

continuing their into potential causes of action under the auspices of their primary secured creditor, Falcon Strategic Partners IV, LP (the "DIP Lender" or "Falcon"), and this Court.

2.    The Court should deny the Conversion Motion because, while it raises a host of theoretical concerns, it fails to set out any concrete facts to support the notion that the Debtors should not be allowed to continue their efforts to maximize recoveries for all creditors.

3.    In fact, as time has passed since the filing of the Conversion Motion, certain of the US Trustee's primary concerns have been eliminated. For example, the Debtors have agreed to DIP Financing with the DIP Lender, which, if approved, will provide the Debtors with liquidity to complete the liquidation of the Debtors' primary physical assets, tickets to various entertainment events. Specifically, the Debtors will receive funding up to $245,000 to continue investigating potential causes of action against parties connected to the Debtors and complete the liquidation of physical assets, which should be finished shortly. The parties have agreed upon a budget and established a deadline of September 20, 2017 for the investigation to provide tangible results.

4.    At the same time, the two sets of chapter 11 debtors -- the Debtors here and the. debtors in the other chapter 11 cases pending in this Court[2] -- and their professionals have agreed to coordinate their investigative efforts together with the DIP Lender to maximize results, avoid conflicts and duplication of efforts, and minimize expenses.  The Debtors have already made significant progress in analyzing how the Debtors' funds were wrongfully dissipated and identifying parties against whom claims should be brought.

5.    The Debtors believe it is significant that the DIP Lender, the largest creditor in these proceedings, which was victimized by the Debtor's former principal, is demonstrating its

---

[2] As the Court is aware, chapter 11 cases were filed entities related to the Debtors (the so-called "Inc. Debtors", i.e., National Events of America, Inc. and New World Events Group, Inc.). Those cases are pending before this Court.

2

support of the chapter 11 liquidation process as the best opportunity to maximize recoveries for all of the estates and their creditors by funding the Debtors' efforts.

6.    Nevertheless, the Court has made it clear that it does not believe the Debtors can investigate themselves. If the Court remains troubled by the independence of the investigation, it has the power to fashion a remedy that would result in the investigation being headed by an independent party, yet allow the Debtors the ability to continue to liquidate assets.

7.    The overarching concept underlying these Chapter 11 Cases is an orderly liquidation, which is a permissible and legitimate use of chapter 11. Converting these cases under chapter 7 does not bring order; it disrupts the momentum of the liquidation and investigations. At the same time, conversion brings another layer of professionals with their concomitant costs and expenses and delay.

## BACKGROUND

8.    On June 5, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court, and orders for relief under section 301 of the Bankruptcy Code were entered in these cases (the "Chapter 11 Cases"). A motion directing the joint administration of the Chapter 11 Cases is pending.

9.    The Debtors have been authorized to remain in possession of their property and to continue in the operation and management of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10.    After conducting an organizational meeting on June 19, 2017, the U.S. Trustee was unable to form an official committee of unsecured creditors for the Chapter 11 Cases. See Conversion Motion at ¶5. The moving parties for the Examiner Motion allege that they requested the appointment of a committee. See Examiner Motion at ¶10.

3

11.    On July 11, 2017, the Debtors filed a motion (the "DIP Motion") for entry of interim and final orders approving debtor in possession financing. [ECF 99]. The DIP Motion provides the Debtors with interim financing to continue their efforts to liquidate assets and continue their investigation into potential causes of action the Debtors may have. The DIP Motion also includes an agreed upon budget and milestones to keep the liquidation and investigation on track.[3] The Debtors' request for interim relief in the DIP Motion is scheduled to be heard during the same calendar together with the Conversion Motion and the Examiner Motion.

12.    The Debtors operated together as a ticket broker and wholesale distributor of tickets for sporting and theatrical events that was formed in 2006. The Debtors provided ticketing services for concert, theater, and sporting events, as well as various V.I.P. hospitality packages that delivered exclusive access to big name events, including hotels, celebrity meet and greets, and exclusive parties.

13.    On May 31, 2017, Jason Nissen ("Nissen"), the former chief executive officer of the Debtor, was arrested and charged by the Federal Bureau of Investigation (the "FBI") with allegedly defrauding victims of at least $70 million through what the FBI characterized as a Ponzi scheme. According to the complaint filed in the United States District Court for the Southern District of New York (the "Complaint"), Nissen "represented to victims that he would use money lent to him and his companies by victims to purchase bulk quantities of premium

---

[3] The Debtors also will liquidate their collateral for the benefit of the DIP Lender, which will be entitled to receive the net proceeds of such liquidation, *i.e.*, after the costs of collection thereof, with the proceeds to be retained by the DIP Lender in a segregated account pending further order of this Court. The DIP lender has advised the Debtors that it intends to file a proposed order with respect to its pending motion for relief from the automatic stay [ECF 24], which will address the segregation and retention of such funds.

HF 11569153v.1 #18887/0002

tickets to sporting and entertainment events...However...Nissen used the victims' money in large part to repay other victims and enrich himself."

14.    According to the Complaint, to perpetuate his fraud, Nissen presented to his victims falsified financial documents and inflated accounts receivable ledgers as purported proof that their money was being used to purchase tickets for resale.

15.    The Complaint further alleges that on or about May 7, 2017, Nissen admitted to one of his victims that he had been operating a Ponzi scheme, and that on May 10, 2017 he made a similar acknowledgement to another victim.

16.    The Debtors learned of Nissen's fraudulent activities on or about May10, 2017. Nissen was terminated on that date, and on May 11, 2017, the Board of Managers of National Events Holdings, LLC, one of the Debtors, retained RAS Advisors, LLC, a nationally-known crisis management and turnaround firm. Timothy Puopolo of RAS has served as Chief Restructuring Officer ("CRO") since that date.

17.    Since RAS has been retained, the CRO's principal activities have consisted of (1) liquidating the Debtors' inventory of saleable tickets, (2) reducing operating expenses to a bare minimum, (3) ensuring the integrity of the Debtors' remaining assets, and (4) investigating potential assets and recoveries, such as amounts due from counterparties, including coordinating the assembly and review of data in the Debtors' books and records.

18.    Nissen's fraud is still the subject of a continuing criminal investigation by the United States Attorney for the Southern District of New York (the "US Attorney Investigation"). Since May 10, 2017, the Debtors have fully cooperated with the US Attorney Investigation by responding to subpoenas that have been issued, providing bank and financial records, and

5

responding to inquiries. Because the US Attorney Investigation has not concluded, the Debtors anticipate that they will have continuing response obligations.

19.    The Debtors are well along in the process of completing the Collateral Liquidation. To date, Debtors have settled six separate sets of US Open tickets claims that have yielded $270,000 to the estates and are working on liquidating further tickets to yield as much as $45,000. On July 10, 2017, the Debtors filed a motion seeking authority to sell their remaining inventory of more than 11,000 tickets to events including Major League Baseball games, concerts and the US Open tennis championship matches through a sealed-bid auction. After the auction contemplated by that motion is completed, the Debtors' primary focus will turn to the Investigation and the Causes of Action.[4]

## OBJECTION

20.    In the Conversion Motion, the U.S. Trustee makes several arguments in favor of conversion. The Debtors contend that the US Trustee has failed to establish cause to support the Conversion Motion.

### A.    The Presence of Continuing Losses to the Estates and No Likelihood of Rehabilitation Are Not Supported by the Current State of these Cases

21.    The US Trustee argues that the Debtors' continuing losses and diminution of the estate due to the costs of liquidation and lack of financing demonstrate an absence of reasonable likelihood of rehabilitation. Since the filing of the Conversion Motion, the Debtors have secured financing to enable them to fund their liquidation. While true that originally Falcon was reluctant to provide DIP funding, its current willingness to enter into a DIP Agreement with the Debtors

---

[4] In addition, the Debtors also have a 40% interest in Concierge Live, LLC, a ticket management software company, and a 50% interest in Winter Music Festivals LLC, a company that produces concert events. The Debtors are currently evaluating the best methods for maximizing the value of those assets.

6

indicates its ongoing support of the Debtors' efforts to administer their estates and do the

necessary work to conduct an internal investigation into potential causes of action.

22.    This proposed DIP funding also responds to the next concern of the US Trustee,

that the costs of the investigation will be lengthy and undoubtedly expensive. The DIP funding

that Falcon is providing will be allocated to these costs. More importantly, an agreed upon

budget will be to enable the Debtors to proceed expeditiously.

23.    This funding further helps the Debtors to implement sale procedures to finish

liquidating the remaining inventory of sporting event and concert tickets in a sealed bid auction.

The Debtors' motion to approve those sale procedures is before this Court on July 18, 2017 [ECF

96]. Also, the Debtors commenced an adversary proceeding against the Nissens regarding US

Open tickets to further recovery of assets.

24.    The US Trustee also questions the Debtors' retention of RAS to sell tickets

because the proceeds will not generate funds to satisfy Falcon's liens. The US Trustee misses the

point that the goal is to liquidate individual assets for maximum value. Given the short lead time

for many of the tickets, the Debtors' use of certain of RAS and its experienced employees

already in place is a reasonable act that is geared to maximizing the recovery of these assets. The

Bankruptcy Code does not require every act to provide a full recovery of debts, just maximum

value under the circumstances. The sales are one part of the Debtors' activities to liquidate

assets in an orderly manner to obtain the best price under the circumstances and maximize

recoveries at the end of the proceedings. Moreover, in response to the US Trustee's observation

that the Debtors are effectively out of business because they are trying to sell their remaining

inventory of tickets, that is true to the extent that once the sales are completed, the Debtors can

reduce staff and eliminate the need for their current office space.

HF 11569153v.1 #18887/0002

**B.    The Alleged Prepetition Gross Mismanagement of the Debtors Does Not Provide Cause for Conversion because it does not Extend to Current Management**

25.    The US Trustee argues that the Debtors' alleged prepetition gross mismanagement warrants conversion. This is a blanket allegation without substance that also denigrates the efforts of those members of the Debtors who have stayed behind to work on the liquidation. The US Trustee later dials back its claim by conceding that the Debtors' Chief Financial Officer has not been determined to be involved in criminal activity but simply relying on unsubstantiated assertions does not provide sufficient cause for the US Trustee to meet its burden for conversion.

26.    The U.S Trustee also complains, again without proof, that the Debtors are engaging in a costly and unreasonable wind-down process without a feasible prospect for reorganization or chapter 11 plan, stating that the current chapter 11 cases will "only create substantial additional administrative claims." The DIP Lender is funding the next period of the chapter 11 process including the conclusion of the liquidation of the remaining physical assets and continuance of the investigations.

27.    The Debtors also disagree with the UST's bald statement that "a chapter 7 trustee . . . will be fully capable of winding down the estates, making any distributions, and investigating any causes of action and can do so in a far more reasonable and cost-effective manner." As Judge Lane noted in 2013,

> A Chapter 7 trustee would have to retain counsel, spend time to become familiar with the Debtors' operations, books and records, and perhaps do so without the benefit of funding by principal creditors, who are looking to maximize recoveries. Nor would the appointment of a Chapter 7 Trustee necessarily result in lower cost to the estate, as it would take extensive time and effort for such a Chapter 7 Trustee to familiarize him or herself with the complex facts and arguments in this case. . . .. Moreover, the cost of running the sale process would arise whether in Chapter 11, Chapter 7, or a non-bankruptcy sale. . . Moreover, the debtors have secured an offer of DIP financing from an affiliate to allow a full sale process to occur for the [ticket] assets, but such funding would presumably be unavailable in a Chapter 7 case, likely restricting the estate's ability to maximize the value of those same assets."

8

*In re MSR Hotels & Resorts, Inc.*, No. 13-11512 (SHL), 2013 WL 5716897, at 1 (Bankr.

S.D.N.Y. Oct. 1, 2013).[5] The court's observations in *MSR Hotels* are relevant here and consistent

with prior case law where courts have recognized that "where liquidation would proceed more

expeditiously and less expensively <u>under the control of the debtor</u>", conversion from Chapter 11

to Chapter 7 may not be warranted." *In re FMO Assocs. II, LLC*, 402 B.R. 546, 553 (Bankr.

E.D.N.Y. 2009) <u>citing</u> *In re McDermott*, 78 B.R. 646, 651 (Bankr. N.D.N.Y. 1985) (emphasis

added). As the US Trustee notes, without DIP financing, the Debtors lacked funding to conduct a

liquidation case where the assets available for liquidation would be insufficient to fund the

investigation. That has been remedied with the proposed DIP financing. It is a stretch to imagine

that a chapter 7 trustee would have success where he or she would have to take these cases on

contingency in the hope of getting a sizeable recovery without funding by a third party.

    28.    In a related argument, the U.S Trustee contends that conversion is necessary

because of the former principal's fraud and dishonesty. Here, the U.S. Trustee is guilty of

broadly applying a standard of guilt by association to the current management of the Debtors and

other related parties including Falcon. Yet these are the very same parties are working together

on a tight budget and timeline to move these cases to a point where the Court and other parties in

interest can evaluate the scope of the estates' assets after liquidation of available assets and the

potential causes of action. The Debtors, supported by the DIP Lender, deserve that opportunity to

pursue the orderly liquidation that they are vigorously pursuing.

---

[5] As Judge Lane further stated "In certain instances, a Chapter 11 liquidating plan is preferable to a Chapter 7 proceeding because the disposition of assets will be conducted in a less-expensive, swifter and more orderly manner by a debtor-in-possession, as opposed to a trustee, who ... is a third party, unfamiliar with the property of the estate. . ... Thus, if the debtor's filing is based on its economic realities and consistent with a legitimate reorganization purpose, liquidation under Chapter 11 is in fact valid." *In re MSR Hotels & Resorts, Inc.*, 2013 WL 5716897, at *1 (quoting *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985–86 (Bankr. N.D.N.Y.1988)).

HF 11569153v.1 #18887/0002

29.     While focusing on liquidating their assets, the Debtors have engaged in their investigation on a parallel track since the Petition Date. Among other actions, Debtors and Falcon have put together a database of Debtors' transactions from 2015 through 2017. This database has been assembled by the Debtors' CRO and Chief Financial Officer relying on their familiarity with the Debtors' operations, books and records, all of which are integral to the investigations. A coordination of efforts has developed between the Debtors and the Inc. debtors, their professionals, and the DIP Lender to keep costs down. These facts undercut the U.S. Trustee's assertion that it is in the best interest of the creditors of these cases to grant the Conversion Motion.

## C.     Unusual Circumstances Exist to Defeat the Conversion Motion

30.     In order for a debtor or other party in interest to successfully defeat a request under § 1112(b)(2) for conversion or dismissal based on cause, the court must find and specifically identify "unusual circumstances establishing that converting or dismissing is not in the best interests of the creditors and the estate." § 1112(b)(2). Although the Bankruptcy Code does not define "unusual circumstances", "courts have determined that it contemplates conditions that are not common in most chapter 11 cases. Such conditions must not only be unusual, they must also demonstrate that dismissal or conversion is not in the best interest[s] of creditors and the estate." The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. See *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007); *In re State St. Assoc.*, 348 B.R. 627, 638 (Bankr. N.D.N.Y. 2006). Even if there is a finding of cause a court is not obligated to convert the case the decision remains within the court's discretion. 11 U.S.C. § 1112; H. Rep. 595, 95th Cong., 1st Sess. 405 (1977) ("Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests."). The statute explicitly provides for this discretion where a

HF 11569153v.1 #18887/0002

court is able to identify "unusual circumstances ... that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate...." 11 U.S.C. § 1112(b)(1), *In re The 1031 Tax Grp., LLC*, 374 B.R. at 93 (Bankr. S.D.N.Y. 2007).

31.    Here there are ample unusual circumstances that favor denial of the Conversion Motion. This is not the typical chapter 11 case because there appears to have been fraud committed by the Debtors' principal officer that may have cost parties hundreds of millions of dollars. Prepetition, the Debtors hired a Chief Restructuring Officer to investigate the circumstances of the fraudulent behavior and to take corrective action. Postpetition, the Debtors are working with their secured lender to fund the liquidation of assets and the investigation into the scope of the fraudulent conduct that harmed the Debtors and their creditors. With respect to the investigation, the Debtors and other principal parties in these cases and the Inc. cases, which suffered their own losses, are sharing the responsibilities to avoid duplication of effort, minimize cost and move the investigation along. The existence of widespread fraud among several related corporate entities and the coordination of efforts to develop a complete picture of the fraud pursuant to a timetable that will encourage the parties to work diligently certainly constitute the type of unusual circumstances that the statute envisions.

**D.    Conversion is not in the Best Interests of the Estates or Creditors**

32.    Based on the foregoing, the U.S. Trustee has not demonstrated how the best interests of the Estates and creditors are not served by virtue of the Debtors continuing their orderly liquidation. Simply stating at the early stage that these Chapter 11 Cases would be better served by installing a trustee without more explanation is insufficient to support the relief the US Trustee seeks. In fact, the steps the Debtors have taken to date are moving liquidation quickly and involve cooperation of several constituencies in these cases. Converting these Chapter 11 Cases will derail the efforts of the parties and not yield any tangible benefits to creditors.

11

## NOTICE

33.     A copy of the Objection has been provided to (i) the U.S Trustee, (ii) counsel to

the moving parties for the Examiner Motion, (iii) counsel to the DIP Lender, (iv) the U.S.

Attorney for the Southern District of New York, and (v) all parties who have filed a notice of

appearance and request for service pursuant to Bankruptcy Rule 2002, in each case by CM/ECF,

facsimile, e-mail, or overnight courier. The Debtors submit that no other further notice is

necessary.

WHEREFORE, based on the foregoing, the Debtors respectfully request the Court enter

separate orders denying the Conversion Motion and granting any other appropriate form of relief.

Dated: New York, New York
       July 14, 2017

HERRICK, FEINSTEIN LLP
*Attorneys for the Debtors and Debtors in
Possession*


By: /s/ Stephen B. Selbst
    Stephen B. Selbst
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com

HF 11569153v.1 #18887/0002