```
UNITED STATES BANKRUPTCY COURT              NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                          :       Case No. 17-11556 (JLG)
                                                :
National Events Holdings, LLC, et al.,          :       Chapter 7
                                                :
                                Debtors.        :       (Jointly Administered)
-------------------------------------------------------x
```

# MEMORANDUM DECISION GRANTING THE
# CHAPTER 7 TRUSTEE'S MOTION PURSUANT TO RULE 9019
# OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
# TO APPROVE SETTLEMENT AGREEMENT BY AND AMONG THE
# CHAPTER 7 TRUSTEE, WELLS FARGO BANK, N.A. AND THE CREDITORS

**A P P E A R A N C E S:**

KASOWITZ BENSON TORRES LLP
*Special Litigation Counsel to Kenneth P.*
*Silverman, the Chapter 7 Trustee*
1633 Broadway
New York, New York 10019
By:    David J. Mark
       Michele L. Angell

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

The matter before the Court in these jointly administered cases is the Motion[2] of Kenneth P. Silverman, Esq., chapter 7 trustee (the "Trustee") of the Debtors' estates (the "Estates"), for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the Confidential Settlement Agreement and Release (the "Settlement Agreement")[3] by and among the Trustee, Wells Fargo Bank, N.A. ("Wells Fargo"), and the Creditors. No responses to the Motion were filed.

On February 6, 2025, the Court conducted a hearing on the Motion. The Trustee appeared at the hearing through counsel. The Court heard argument from the Trustee. For the reasons set forth herein, the Court grants the Motion.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] Capitalized terms have the meanings ascribed to them herein.

[2] *Chapter 7 Trustee's Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure to Approve Settlement Agreement by and Among the Chapter 7 Trustee, Wells Fargo Bank, N.A. and the Creditors*, ECF No. 1057. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 17-11556.

[3] A copy of the Settlement Agreement is annexed to the Motion as Exhibit A.

2

## BACKGROUND

On May 31, 2017, the Debtors' former Chief Executive Officer and/or Managing Member, Jason Nissen ("Nissen"), was arrested and charged by the Federal Bureau of Investigation with defrauding victims of at least $75 million through a Ponzi scheme.

On June 5, 2017, the LLC Debtors[4] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "LLC Debtors' Chapter 11 Cases"). Thereafter, the Court entered an order authorizing the joint administration and procedural consolidation of the LLC Debtors' Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).[5]

On June 28, 2017, the Corporate Debtors[6] (with the LLC Debtors, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Corporate Debtors' Chapter 11 Cases").

On August 7, 2017, the Court entered an order converting the LLC Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (the "LLC Debtors' Chapter 7 Cases").[7] Kenneth Silverman was appointed as the interim trustee of the LLC Debtors by the United States Trustee;[8] he duly qualified and is acting as chapter 7 trustee herein.

---

[4] The LLC Debtors consist of: National Events Holdings, LLC; National Events Intermediate, LLC; National Event Company II, LLC; National Event Company III, LLC; and World Events Group, LLC.

[5] *Order Directing Joint Administration of Related Cases*, ECF No. 20.

[6] The Corporate Debtors consist of National Events of America, Inc. and New World Events Group Inc.

[7] *Order Converting the Debtors' Chapter 11 Bankruptcy Cases to Cases Under Chapter 7 Under the Bankruptcy Code*, ECF No. 143.

[8] *Appointment of Chapter 7 Trustee - Converted Case from Chapter 11 Case to Chapter 7 - and Scheduling of Section 341(a) Meeting to be Noticed by Clerk's Office*, ECF No. 144.

On January 23, 2020, the Court entered an order converting the Corporate Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (together with the LLC Debtors' Chapter 7 Cases, the "Chapter 7 Cases") *nunc pro tunc* to August 7, 2017, providing for the appointment of the Trustee in those cases, and directing the joint administration and procedural consolidation of the Chapter 7 Cases.[9]

**The Kasowitz Retention Application and**
**The Wells Fargo Rule 2004 Application**

By order dated June 3, 2021,[10] the Court authorized the Trustee to employ Kasowitz Benson Torres LLP ("Kasowitz") as special litigation counsel to, among other things, pursue and prosecute potential claims (the "Bank Claims") against various financial institutions, including Wells Fargo, used by Nissen and the Debtors under Nissen's control. On September 24, 2021, Kasowitz, on behalf of the Trustee, requested the entry of an order authorizing the direct examination of, and production and turnover of documents by, Wells Fargo (the "Rule 2004 Application").[11]

By order dated October 18, 2021 (the "2021 Discovery Order"),[12] the Court authorized the Trustee, through Kasowitz, to conduct discovery from Wells Fargo, pursuant to Rule 2004 of the

---

[9] *Order (A) Providing for the Agreed Allocation and Payment of Certain Claims, (B) Converting the Corporate Debtors' Cases to Chapter 7 Cases, (C) Providing for the Appointment of the Trustee in the Corporate Cases, (D) Directing Joint Administration of all of the Chapter 7 Cases, and (E) Granting Related Relief*, ECF No. 513 ("Second Joint Administration Order").

[10] *Order for Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates*, ECF No. 821.

[11] *Application for Entry of an Order Directing the Examination of and Supplemental Production of Documents by Wells Fargo Bank, N.A. under Federal Rule of Bankruptcy Procedure 2004*, ECF No. 834.

[12] *See Order Directing the Examination of and Supplemental Production of Documents by Wells Fargo Bank, N.A. Under Federal Rule of Bankruptcy Procedure 2004*, ECF No. 840.

4

Federal Rules of Bankruptcy Procedure ("Rule 2004"), in connection with potential Bank Claims against Wells Fargo (the "Wells Fargo Claims").

The Trustee describes Wells Fargo as "Nissen's and the Debtors' primary banking institution during a period of the time in which Nissen ran his Ponzi scheme—specifically, until around the summer of 2015, when Nissen moved most of his and the Debtors' accounts to Citibank, N.A. ('Citibank'), which was willing and able to accommodate the deposit account control agreement ('DACA') required by the Debtors' then-lender and minority owner." Motion ¶ 12.

He explains that pursuant to Rule 2004, he sought oral examination of Wells Fargo and the production of communications between or among Wells Fargo, Nissen, and/or the Debtors, and any Wells Fargo documents (except for exempt suspicious activity reports, *i.e.*, SARs) concerning money laundering or other fraudulent, suspicious, or illegal activity on the part of Nissen and/or any other person associated with Nissen and/or the Debtors. *Id.* (citing Rule 2004 Application ¶ 23.).

On February 2, 2022, the Court approved a stipulation between the Trustee and Wells Fargo setting Wells Fargo's deadline to respond to the Trustee's subpoena issued pursuant to the 2021 Discovery Order (the "2021 Subpoena") and addressing certain parameters concerning Wells Fargo's search of electronically stored information.[13]

**The Discovery Disputes**

The Trustee says that in April of 2022, he learned that Wells Fargo maintained that it did not have possession of any responsive communications with, or concerning, Nissen or the Debtors, from the period of January 1, 2015, through June 30, 2017 (the "Time Period"). Motion ¶ 15.

---

[13] *Stipulation Pertaining to Subpoena for Rule 2004 Examination dated October 19, 2021*, ECF No. 861.

5

Nonetheless, the Trustee located—on the Debtor's systems—responsive emails between Nissen and Wells Fargo from the Time Period. *Id.* He says thereafter, Wells Fargo produced approximately 120 older emails, from 2014, to the Trustee. *Id.*

On July 22, 2022, the Trustee submitted a letter to the Court to request a conference concerning Wells Fargo's allegedly inadequate responses to his 2021 Subpoena.[14] Wells Fargo responded to the letter,[15] and on August 4, 2022, the Court conducted a discovery conference. At that time, the Court directed the Trustee to transmit a discovery deficiency letter to Wells Fargo, which the Trustee did on August 16, 2022.[16] On August 30, 2022, Wells Fargo responded to that letter.[17] On October 27, 2022, the Court held a discovery conference. During the conference, the Court and parties identified three issues (collectively, the "Gating Issues") as central to the resolution of the discovery disputes between the parties, as follows:

> (i) whether Wells Fargo had a duty to preserve documents responsive to the Corporate Debtors' Subpoena until service of the 2021 Subpoena;[18]
>
> (ii) whether the Trustee's subsequent requested discovery into Wells Fargo's document retention was within the scope of Rule 2004; and
>
> (iii) whether all documents related to a request pursuant to the USA Patriot Act of 2001, made by Citibank to Wells Fargo during the summer of 2015, concerning Nissen's and the Debtors' potential money laundering, were exempt from discovery under the Bank Secrecy Act.

---

[14] *Letter to Judge Garrity from Howard W. Schub dated July 22, 2022, Requesting a Conference*, ECF No. 891.

[15] *Letter to Judge Garrity, Jr. in Response to Trustee's July 22, 2022 Letter*, ECF No. 895.

[16] *Letter to Judge Garrity from Howard W. Schub dated September 9, 2022*, ECF No. 903, Ex. A.

[17] *Letter to Judge Garrity from Howard W. Schub dated September 9, 2022*, ECF No. 903, Ex. B.

[18] The "Corporate Debtors' Subpoena" was a subpoena issued in November 2017 by the Corporate Debtors in one of the Corporate Debtors' Chapter 11 Cases prior to the Second Joint Administration Order.

On November 15, 2022, the Trustee submitted his opening letter-brief addressing the Gating Issues.[19] On March 27, 2023, Wells Fargo filed its response.[20] On January 30, 2024, the Trustee filed his reply letter-brief in support of his position on the Gating Issues.[21]

During a discovery conference on March 5, 2024,[22] the Court directed the Trustee and Wells Fargo to engage in direct settlement discussions and/or mediation. On March 18, 2024, the Court held another conference and ordered the Trustee and Wells Fargo to consult the Court's mediation list and select a mediator.[23]

**The Mediation**

On April 2, 2024, the Trustee and Wells Fargo submitted a joint letter informing the Court that they agreed to participate in a mediation with Deborah A. Reperowitz, Esq., of Stradley Ronon Stevens & Young, LLP, as their mediator (the "Mediator").[24] On April 4, 2024, the Court entered a stipulated order, in which it referred the Wells Fargo Claims to mediation and appointed the Mediator.[25] Thereafter, the parties engaged in mediation.

---

[19] *Letter to Judge Garrity from Howard W. Schub dated November 15, 2022 re: National Events*, ECF No. 916.

[20] *Response of Wells Fargo,* ECF No. 937. In April 2023, the Trustee and Wells Fargo entered into a tolling agreement (the "Tolling Agreement"). *Letter addressed to Judge James L. Garrity, Jr. from Michele L. Angell re: Request to Cancel Emergency Conference,* ECF No. 946. On December 11, 2023, the Trustee formally notified Wells Fargo of his election to terminate the Tolling Agreement. *Letter to Judge Garrity from Howard W. Schub dated January 30, 2024 re: National Events*, ECF No. 983, at 1.

[21] *Letter to Judge Garrity from Howard W. Schub dated January 30, 2024 re: National Events*, ECF No. 983.

[22] *Minutes of Proceedings Re: Hearing held on 3/5/2024*, ECF No. 991.

[23] *Minutes of Proceedings Re: Hearing Held on 3/18/2024*, ECF No. 993.

[24] *Letter /Joint Letter Re: Mediation Filed by Howard Warren Schub on behalf of Kenneth Silverman*, ECF No. 994.

[25] *Stipulation and Order (I) Authorizing Mediation, (II) Appointing Deborah A. Reperowitz, Esq as Mediator*, ECF No. 995.

On or around July 3, 2024, the Trustee and Wells Fargo (together, the "Settling Parties") both accepted the Mediator's proposal to enter into a written agreement memorializing the following essential settlement terms:

(a) Wells Fargo to pay the Trustee $400,000.00 (the "Settlement Amount");

(b) The Settling Parties to exchange mutual releases;

(c) The three assignors of Bank Claims to the Trustee (the "Creditors")[26] to execute the written settlement agreement as to the release sections only; and

(d) Settlement to be subject to this Court's approval

(the "Mediator's Proposal").

The Settling Parties have since entered into the Settlement Agreement memorializing the Mediator's Proposal. All three Creditors have now executed the Settlement Agreement in accordance with the assignments of their Bank Claims to the Trustee.[27]

**The Settlement Agreement**

Pursuant to the Mediator's Proposal, the Trustee, Wells Fargo, and the Creditors have negotiated and executed the Settlement Agreement, subject to approval by the Court. Without limitation, the Settlement Agreement provides, as follows:

---

[26] As a condition to finalizing the Settlement Agreement, Wells Fargo required the three creditors that had assigned Bank Claims to the Trustee to agree to release Wells Fargo from liability related to the Wells Fargo Claims. *See Letter re: Joint Status Update*, ECF No. 1032; *Letter re: Joint Status Update*, ECF No. 1039. The Creditors include: (i) FMP Agency Services, LLC and Falcon Strategic Partners, IV LP; (ii) Taly USA Holdings Inc. and SLL USA Holdings, LLC (together, "Taly"), and (iii) Hutton Ventures LLC ("Hutton").

[27] In exchange for its signature, Hutton requested to receive, and the Trustee agreed to pay, the "Remaining Hutton DIP Loan Amount"—as defined in the *Stipulation of Settlement*, ECF No. 847-3 (the "Hutton Assignment")—within twenty days of the Trustee's receipt of the Settlement Payment from Wells Fargo. Motion ¶ 30. The Remaining Hutton DIP Loan Amount totals $28,506.23, comprised of: (i) $17,403.07 principal, as set forth in the Hutton Assignment; plus (ii) $11,103.16 in interest accruing at the 18% default rate from June 17, 2021, as specified in the Hutton Assignment, through December 13, 2024, the day after Taly signed the Settlement Agreement, at which point Hutton agreed to cease charging interest. *See* Hutton Assignment, ¶ 1.

a. Wells Fargo shall make a single payment of $400,000.00 to the Trustee in full and final satisfaction of the Remaining Amount (the "Settlement Payment"). Settlement Agreement ¶ 3.

b. The Settlement Payment shall be made by wire transfer to the Trustee as soon as reasonably practicable, but not later than thirty (30) days of, receipt of each executed copy of the Settlement Agreement from the Trustee and the Creditors and a signed and completed IRS W-9 Form. *Id*.

c. Upon receipt of the Settlement Payment by the Trustee, the Trustee and the Creditors are deemed to release Wells Fargo, and Wells Fargo is deemed to release the Trustee and the Creditors, from all claims related to the ownership, operation, management, and use of the deposit accounts at Wells Fargo by Nissen and the Debtors. *Id*. ¶¶ 3, 4.

d. Within five business days of the latest of receipt of the Settlement Payment or an executed copy of the Settlement Agreement, the Trustee shall take whatever action is necessary to withdraw and/or dismiss the Rule 2004 Application as it relates to Wells Fargo. *Id*. ¶¶ 4, 7.

e. The Trustee and Wells Fargo are precluded from speaking to any news organizations about the Settlement Agreement. *Id*. ¶ 19.

f. The Settlement Agreement is subject to this Court's entry of an order approving and authorizing the Trustee to enter into the Settlement Agreement. If the Court does not enter an order approving the Settlement Agreement, the agreement will be voidable at the sole option of Wells Fargo. *Id*.

**The Motion**

In support of the Motion, the Trustee submits that, for "*at least*" the following reasons, the Settlement Agreement falls well with the range of reasonableness. Motion ¶ 37. The Trustee states that he has determined, in his business judgment, that the benefits of entering into the Settlement Agreement outweigh the burden of litigating the Wells Fargo Claims. *Id*. ¶ 38. He asserts that the difference between the amount of potential recovery in litigation and the amount Wells Fargo has agreed to pay under the Settlement Agreement is "nominal." *Id*.

He contends that the probability of success in litigating the Wells Fargo Claims "is far from certain." *Id*. He notes that because Nissen moved his and the Debtors' bank accounts to Citibank

in 2015, most of Wells Fargo's knowledge and conduct that would support any potential aiding and abetting claims is over ten years old. *Id*. The Trustee believes that much of Nissen's fraud occurred after 2015, and Wells Fargo has represented that it does not have any correspondence during the Time Period to produce, further hindering the success of potential litigation. *Id*. Based on these considerations, the Trustee submits that even if he could successfully obtain a higher recovery than the Settlement Amount in litigation, the benefits of the entering the Settlement Agreement outweigh the burden of litigating. *Id*.

The Trustee further contends that litigating the Wells Fargo Claims would be inordinately complex, delaying recovery of "badly needed cash" for the Estates. *Id*. ¶ 39. The Trustee asserts that the issues in litigation would include Wells Fargo's actual knowledge and substantial assistance of Nissen's fraud, as well as the Gating Issues. *Id*. He argues that the thirty-five pages of single-spaced, letter briefing submitted by the Trustee and Wells Fargo speaks for itself regarding the complexity of the Gating Issues. *Id*. He contends that litigation would be protracted because it would first require determining Wells Fargo's duty to preserve correspondence, and then, potentially, alleged spoilation, before reaching the issues of the scope of the Bank Secrecy Act privilege and the substantive issues of aiding and abetting fraud. *Id*. He notes that in a similar litigation proceeding against Citibank, he has been engaged in fact discovery for over a year. *Id*.

The Trustee maintains that the Settlement Agreement is in the paramount interests of the creditors because it provides for an expeditious, efficient means of resolving the complex Wells Fargo Claims. *Id*. ¶ 40. He contends that, since 2022, the parties have engaged in arm's length negotiations "on-and-off." *Id*. ¶ 43. He asserts that, from March of 2024 through July of 2024, Wells Fargo and the Trustee intensively negotiated, which, after mediation, culminated in the

10

Settlement Agreement. *Id*. Accordingly, the Trustee requests the Court enter an order approving the Settlement Agreement. *Id*. ¶ 32.

## LEGAL PRINCIPLES

"There is a strong policy favoring settlements and compromises in bankruptcy cases as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re Pursuit Holdings (NY), LLC*, No. 18-12738, 2019 WL 1220928, at *6 (Bankr. S.D.N.Y. Mar. 12, 2019) ("*Pursuit Holdings*"). Accordingly, as a "general rule . . . courts should approve settlements 'unless they fall below the lowest point in the range of reasonableness.'" *Id*. (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).

Pursuant to Bankruptcy Rule 9019, "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). To grant relief under Bankruptcy Rule 9019, the Court must find that the settlement "is fair and equitable and in the best interests of the estate." *In re Charter Commun.*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–425 (1968)). The settlement proponent bears the burden of persuading the Court that the settlement is in the best interests of the estate. *In re MF Glob. Inc.*, No. 11-2790, 2012 WL 3242533, at *6 (Bankr. S.D.N.Y. Aug. 10, 2012). The Court's responsibility is to canvass the issues, inform itself of all the necessary facts, and make an independent evaluation of the reasonableness of the settlement. *Id.* at *5. The Court does not need to conduct a mini trial of the underlying claims and issues and may give deference to the business judgement of the trustee recommending settlement. *Id*.

11

The Second Circuit has outlined seven interrelated factors (the "*Iridium* Factors") for courts to consider when evaluating whether to approve a settlement:

(1) the balance between the litigation's possibility of success and the settlement's future benefits;

(2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

(3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

(4) whether other parties in interest support the settlement;

(5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

(6) the nature and breadth of releases to be obtained by officers and directors; and

(7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (internal quotation marks omitted).

The Court has considered the *Iridium* Factors to the extent they are applicable herein. These factors weigh in favor of approving the settlement.

## ANALYSIS

### (1) The Balance Between the litigation's Possibility of Success and the Settlement's Future Benefits

The Trustee maintains, in his business judgment, that the difference between the amount he could obtain from litigating the Wells Fargo Claims, and the amount Wells Fargo has agreed to pay pursuant to the Settlement Agreement, is nominal, and that his probability of success in

12

litigating this small difference is far from certain. Motion ¶ 38. The record bears out that conclusion.

The Trustee contends that Nissen commenced his Ponzi scheme prior to mid-2015. *Id.* The facts show that the Trustee faces significant challenges in asserting an aiding and abetting claim against Wells Fargo for several reasons.

First, in the summer of 2015, Nissen moved most of his and the Debtors' bank accounts to Citibank, to accommodate its lender's DACA requirement. *Id.* Thus, much of Nissen's alleged fraud apparently occurred after Citibank became his primary banking institution. It follows that in pursuing an aiding and abetting claim against Wells Fargo, most of Wells Fargo's alleged knowledge and conduct supporting any such claims is, at best, ten years old. Moreover, in any litigation with Wells Fargo, the Trustee will have to rely solely on the Debtors' own email correspondence from the Time Period, since Wells Fargo represented it has none to produce.

Accordingly, the possibility of success in litigating the Wells Fargo Claims is uncertain. On the other hand, the Settlement Agreement benefits the Estates because it provides immediate payment of $400,000.00 and avoids the cost and risk of litigation. Courts have found that such benefits weigh in favor of settlement. *In re MF Glob. Inc.*, 2012 WL 3242533, at *6 ("First, the Agreement provides immediate benefit to the . . . estate whereas litigation into the complexities of resolving disputes . . . would be complex, expensive, and provide no clear likelihood of success."); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) (finding that reduction in debt and the "cessation of the costs of further litigation" was a sufficient benefit to the estate when compared with uncertain chances of success in litigation). Moreover, when the likelihood of success and payoff in litigation is uncertain but a settlement agreement provides certain payout, settlement is favored. *Pursuit Holdings*, 2019 WL 1220928, at *8. Here, the certain benefits to the

Estates, compared to the uncertain possibility of success in future litigation, weigh in favor of approving the Settlement Agreement.

**(2) The Likelihood of Complex and Protracted Litigation, with its Attendant Expense, Inconvenience, and Delay, Including the Difficulty in Collecting on the Judgment**

The likelihood of complex and protected litigation is "of particular consequence in the bankruptcy context, where the prompt administration of a bankruptcy estate, for the benefit of the debtor and creditors alike, is among a trustee's central objectives." *Pursuit Holdings,* 2019 WL 1220928, at *8 (quoting *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 75 (Bankr. E.D.N.Y. 2009)).

The Trustee has demonstrated the litigating the Wells Fargo Claims would be extremely complex. The matters at issue involve not only the bank's alleged actual knowledge and substantial assistance of Nissen's fraud, but also: (i) whether Wells Fargo had a duty between November 2017 (the date of the Corporate Debtors' Subpoena) and October 2021 (when the Trustee served the 2021 Subpoena), to preserve correspondence from the Time Period; (ii) whether, if it did have such a duty, the Trustee could discover Wells Fargo's document retention policies and practices under Rule 2004 and potentially assert a spoliation claim; and (iii) whether all documents related to Citibank's Patriot Act request to Wells Fargo are privileged under the Bank Secrecy Act. Motion ¶ 39. The Settling Parties' nearly thirty-five pages, single spaced, of letter-briefing on the Gating Issues speaks for itself regarding the complexity of the litigation. Second, the litigation likely would be protracted because it would first require determining Wells Fargo's duty to preserve, and then, potentially, alleged spoliation—all in addition to the scope of Bank Secrecy Act privilege and finally, the substantive aiding and abetting fraud issues themselves.

The Trustee's recovery of badly needed cash for the Estates would be delayed pending such litigation. Notably, the Trustee has been engaged in fact discovery of his Bank Claims against Citibank for more than a year. *Id.*

### (3) The Paramount Interests of the Creditors and the Degree to Which Creditors Support the Proposed Settlement

It is in the paramount interest of the creditors to receive "prompt distributions from the estate without incurring further litigation expenses that would diminish the estate." *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019). The Settlement Agreement provides for an expeditious, efficient means of resolving the complex Wells Fargo Claims, which are in dispute and would be extremely difficult to litigate. As such, it is plainly in the paramount interests of all creditors. Moreover, not only do the Creditors—which are the Estates' three largest—support the Settlement Agreement, they signed it and became parties to its releases at Well Fargo's request. *See In re Stone Barn Manhattan LLC*, 405 B.R. at 75 (approving a settlement that was unopposed and supported by the creditors "most directly affected by it.").

### (4) Whether Other Parties in Interest Support the Settlement

No responses to the Motion, whether supporting or opposing, were filed. As such, this factor is neutral and does not weigh in favor for or against the Trustee.

### (5) The Competency and Experience of Counsel Supporting the Settlement

The Settling Parties were each represented by competent and sophisticated counsel with respect to negotiating the Settlement Agreement and were further assisted by the Mediator, who is listed on the Court's register of mediators, in reaching the Mediator's Proposal. Motion ¶ 41. Moreover, this Court has heard all issues regarding the Debtors' bankruptcy cases since the petition dates and is highly knowledgeable and experienced such as to review the Settlement Agreement. Application of this factor weighs in favor of approving the Settlement Agreement. *See In re*

*Charter Commun.,* 419 B.R. at 256 (Fifth *Iridium* Factor is satisfied where "[a]ll parties to the . . . Settlement were represented by highly regarded law firms and financial advisors with ample relevant experience in the restructuring field."); *accord In re Wythe Berry Fee Owner LLC*, 660 B.R. 534, 567 (Bankr. S.D.N.Y. 2024) ("The competency and experience of Debtor's counsel and the presiding judge in this proceeding was not questioned by any party. Thus, the fifth Iridium Factor favors approval of the Settlement.").

**(6) The Nature and Breadth of Releases to be Obtained by Officers and Directors**

The releases in the Settlement Agreement are narrow and exclude "other unrelated claims," "separate continuing contractual and/or equitable obligations as may currently exist between or among the Parties, including, for example, existing or other mortgage loans encumbering other property, credit cards held by any party or any other banking, credit card, auto loan, or investment relationship with Wells Fargo and/or its affiliated entities," or "any claims between the Trustee on the one hand and any of the Creditors on the other." Settlement Agreement, ¶¶ 4, 6. Additionally, the releases between the Creditors and Wells Fargo were a necessary condition for Wells Fargo's agreement and, therefore, are essential to the settlement.

The releases are reasonable under the circumstances as they are narrowly tailored and necessary to the Settlement Agreement. *See In re Wythe Berry Fee Owner LLC*, 660 B.R. at 567 (finding releases were "fair and reasonable under the circumstances as (i) they provide certainty and finality to the Parties with respect to matters the Settlement Agreement resolves and (ii) were necessary to induce the Parties to enter into the Settlement.").

**(7) The Extent to Which the Settlement is the Product of Arm's Length Bargaining**

The Settlement Agreement is the product of arm's length negotiations to reconcile the Wells Fargo Claims that proceeded on-and-off since 2022, and intensively during March through

16

July of 2024, as ably assisted by the Mediator commencing in April 2024. This factor plainly supports approval of the Settlement Agreement. *See In re Dewey & Leboeuf LLP,* No. 12-12321, 2013 WL 2360898, at *1 (Bankr. S.D.N.Y. May 30, 2013) (approving a settlement pursuant to Rule 9019, noting that the "arms-length negotiations among the [p]arties include[ed] a mediation conducted under the supervision of the JAMS Mediator . . . ."); *see also In re NNN 3500 Maple 26, LLC*, No. 13-30402, 2011 WL 13497312, at *1 (Bankr. N.D. Tex. Jan. 31, 2011) (approving settlement where "good faith, arms-length negotiations include[ed] Court-ordered mediation.")

The Settlement Agreement falls well above the lowest point in the range of reasonableness and is in the best interests of the Estates. It resolves the Wells Fargo Claims and related discovery disputes without the risk and expense of litigation and provides immediate payment to the Estates. The Court finds the settlement is fair and equitable under Rule 9019.

## CONCLUSION

Based on the foregoing, the Court grants the Motion. The Trustee is directed to submit an order.

IT IS SO ORDERED.

Dated: February 7, 2025
      New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge