| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>---------------------------------------------------------- x<br>In re:                                                                    :<br>                                                                              :<br>National Events Holdings, LLC, *et al.*,           :<br>                                                                              :<br>                                                        Debtors.    :<br>---------------------------------------------------------- x | NOT FOR PUBLICATION<br><br>Case No. 17-11556 (JLG)<br>Chapter 7<br><br>Jointly Administered |

**MEMORANDUM DECISION AND ORDER RESOLVING THE TRUSTEE'S
<u>MOTION TO AMEND</u>**

**A P P E A R A N C E S:**

RIMON P.C.
*Attorneys for the Chapter 7 Trustee*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:     Brian Powers
          Courtney M. Roman


WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
*Office of the United States Trustee - NY Office*
One Bowling Green, Room 534
New York, New York 10004
By:     Mark Bruh


LAW OFFICES OF KENNETH L. KUTNER
*Attorney for Barry M. Koch PLLC*
200 Garden City Plaza - Suite 315
Garden City, New York 11530
By:     Kenneth L. Kutner

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Kenneth P. Silverman, Esq., is the Trustee (the "Trustee") of the Debtors' estates (the "Estates") in these jointly administered Chapter 7 Cases. Approximately four years ago, the Court authorized the Trustee to retain Kasowitz Benson Torres LLP ("KBT") as special litigation counsel under sections 327(e), 328 and 330 of the Bankruptcy Code (the "KBT Retention Order").[2] The matter before the Court is the Trustee's motion for an order authorizing him to amend the KBT Retention Order (the "Motion").[3] The Office of the United States Trustee (the "UST") objects to the Motion (the "UST Objection").[4] The Trustee filed a "supplemental submission" in connection with the Motion,[5] and a reply in further support of the Motion (the "Reply").[6] Howard W. Schub,

---

[1] Capitalized terms shall have the meanings ascribed to them herein.

[2] *Order for Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates*, ECF No. 821. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 17-11556.

[3] *Motion to Amend the Order Authorizing the Trustee's Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates*, ECF No. 1052. In a related matter, the Trustee is seeking authorization to pay $47,484 in Expert Fees to Barry M. Koch PLLC from Estate funds, pursuant to section 363(b) of the Bankruptcy Code. *See Motion for Entry of an Order Pursuant to Section 363(b) of the Bankruptcy Code Authorizing and Approving Payment of Expert Fee to Barry M. Koch PLLC*, ECF No. 1044 (the "Section 363 Motion"). That motion is not the subject of this Memorandum Decision and Order. However, it is relevant to the Motion and as necessary, the Court will refer to it herein.

[4] *Objection of the United States Trustee to: (I) Motion to Amend the Order Authorizing the Trustee's Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates; and (II) Motion for Entry of Order Pursuant to Section 363(B) of the Bankruptcy Code Authorizing and Approving Payment of Expert Fee to Barry M. Koch PLLC*, ECF No. 1061.

[5] *The Trustee's Supplemental Submission in Connection with the Motion for Entry of an Order Pursuant to Section 363(b) of the Bankruptcy Code Authorizing and Approving Payment of Expert Fee to Barry M. Koch PLLC*, ECF No. 1062.

[6] *Reply in Further Support of Motion to Amend the Order Authorizing the Trustee's Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtor' Estates*, ECF No. 1066.

Esq.[7] submitted a declaration in support of the Motion (the "Second Schub Decl.").[8] On February 6, 2025, the Court conducted a hearing on the Motion (the "February 6 Hearing"). For the reasons set forth herein, the Court overrules the UST Objection and grants the Motion.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## BACKGROUND

**The Bankruptcy Cases**

On May 31, 2017, the Debtors' former Chief Executive Officer and/or Managing Member, Jason Nissen ("Nissen"), was arrested and charged by the Federal Bureau of Investigation with defrauding victims of at least $75 million through a Ponzi scheme.

On June 5, 2017, the LLC Debtors[9] each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "LLC Debtors' Chapter 11 Cases"). Thereafter, the Court entered an order authorizing the joint administration and procedural consolidation of the LLC Debtors' Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.[10]

---

[7] Mr. Schub is a member of the firm Nelson Mullins Reilly & Scarborough LLC. Prior to July 2024, he was a member of KBT.

[8] *Declaration of Howard W. Schub, Esq., in Further Support of Motion to Amend the Order Authorizing the Trustee's Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates*, ECF No. 1065.

[9] The LLC Debtors consist of: National Events Holdings, LLC; National Events Intermediate, LLC; National Event Company II, LLC; National Event Company III, LLC; and World Events Group, LLC.

[10] *Order Directing Joint Administration of Related Cases*, ECF No. 20.

3

On June 28, 2017, the Corporate Debtors[11] (with the LLC Debtors, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Corporate Debtors' Chapter 11 Cases").

On August 7, 2017, the Court entered an order converting the LLC Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (the "LLC Debtors' Chapter 7 Cases").[12] Kenneth Silverman was appointed as the interim trustee of the LLC Debtors by the United States Trustee,[13] he duly qualified and is acting as Trustee herein.

On January 23, 2020, the Court entered an order converting the Corporate Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code (together with the LLC Debtors' Chapter 7 Cases, the "Chapter 7 Cases") *nunc pro tunc* to August 7, 2017, providing for the appointment of the Trustee in those cases, and directing the joint administration and procedural consolidation of the Chapter 7 Cases.[14]

**The Trustee Retains KBT As Special Counsel**
**Pursuant To A Strict Contingency Fee Arrangement**

On February 11, 2021, the Trustee filed an application to employ KBT as special litigation counsel under sections 327(a), 328 and 330 of the Bankruptcy Code to, *inter alia*, pursue and prosecute potential claims (the "Claims") against various financial institutions, including Citibank,

---

[11] The Corporate Debtors consist of National Events of America, Inc. and New World Events Group, Inc.

[12] Order Converting the Debtors" Chapter 11 Bankruptcy Cases to Cases Under Chapter 7 Under the Bankruptcy Code, ECF No. 143.

[13] *Appointment of Trustee - Converted Case from Chapter 11 Case to Chapter 7 - and Scheduling of Section 341(a) Meeting to be Noticed by Clerk's Office*, ECF No. 144.

[14] *Order (A) Providing for the Agreed Allocation and Payment of Certain Claims, (B) Converting the Corporate Debtors' Cases to Chapter 7 Cases, (C) Providing for the Appointment of the Trustee in the Corporate Debtors' Cases, (D) Directing Joint Administration of all of the Chapter 7 Cases, and (E) Granting Related Relief*, ECF No. 513 (the "Second Joint Administration Order").

4

N.A. ("Citibank"), used by Nissen and the Debtors under Nissen's control (the "KBT Retention Application").[15]

On May 28, 2021, the Court conducted a hearing on the application (the "May 28 Hearing"). The UST did not appear at the hearing, and there was no opposition to the application.[16] On June 3, 2021, the Court approved the KBT Retention Application and entered the KBT Retention Order. By that order, the Trustee retained KBT as special litigation counsel. As relevant, the order:

> authorized [the Trustee] to remit an upfront engagement retainer to KBT in the amount of . . . $150,000 (the "Retainer") to be used to pursue the Claims;[17] . . .
>
> [directed] that KBT shall be paid based on a strict contingency fee arrangement . . . equal to forty (40%) percent of . . . any and all recoveries obtained from its pursuit of the Claims (the "Recoveries"); and
>
> [provided that] no compensation or reimbursement of expenses shall be paid to KBT for services rendered to the Trustee, except upon proper application under [sections] 327(e), 328, 330 and 331 [of the Bankruptcy Code] . . . .

KBT Retention Order at 2.

**The Citibank Action**

On June 1, 2022, KBT, as special litigation counsel, commenced an action against Citibank (the "Citibank Action") on behalf of the Trustee by filing a complaint (the "Complaint") in New York State Supreme Court, County of New York, Commercial Division. Section 363 Motion ¶ 18.

---

[15] *See Application by the Trustee for an Order Authorizing Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and Debtors' Estates*, ECF No. 811. The application was supported by the *Declaration of Howard W. Schub, Esq., in Support of Application to Authorize Employment and Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to Trustee*, ECF No. 811-1 (the "First Schub Decl.").

[16] The transcript of the May 28, 2021 hearing is annexed as Exhibit A to the UST Objection (the "May 2021 Tr.").

[17] The Trustee is authorized to pay the Retainer using the Estates' funds otherwise due to Hutton Ventures LLC ("Hutton") on account of the post-petition financing previously approved by the Court; and provided further that Hutton would thereafter have no further claim for repayment of any such funds. *See* First Schub Decl. ¶ 3.

Citibank later removed the Citibank Action to the United States District Court for the Southern District of New York (the "District Court"). *Id.* Without limitation, the Complaint essentially alleges that Citibank aided and abetted Nissen's fraud. *Id.*

On November 6, 2023, the District Court granted in part and denied in part Citibank's motion to dismiss the Complaint. *Id*. ¶ 19. On September 30, 2024, the District Court denied Citibank's motion for judgment on the pleadings. *Id*. ¶ 20. The Trustee and Citibank remain engaged in discovery in the Citibank Action. *Id*. ¶ 21.

**KBT Retains Koch As An Expert In The Citibank Action**

Pursuant to a letter agreement dated August 15, 2024 (the "Retention Letter"),[18] KBT, on behalf of the Trustee, retained Barry M. Koch PLLC ("Koch") to provide independent professional services in connection with the Citibank Action. Specifically, KBT retained Koch "to provide expert testimony on the Trustee's behalf at deposition, mediation, arbitration, trial, or any other legal or alternative dispute resolution proceedings, as to those matters on which Koch consulted or performed work." Retention Letter ¶ 1. To that end, and without limitation, in the letter, "KBT agree[d] that Koch [would] be compensated for the services performed under this agreement on a time and material basis, based on actual hours worked," and "Koch understands and agree[d] that the Trustee will be solely responsible for payment of Koch's fees and expenses." *Id*. ¶ 5. The parties agreed that "[t]he current hourly rate for Koch is $950/hour" and that "[a] retainer fee of $9,500, applicable against charges for services, shall be paid to Koch." *Id.* The agreement calls for Koch to "bill the Trustee at the end of each month by submitting invoices, with detailed billing entries for all fees and expenses incurred in connection with the engagement, directly to the

---

[18] A copy of the Retention Letter is annexed as Exhibit B to the Section 363 Motion. *Re: Silverman v. Citibank, email from Ronald R. Rossi to Barry M. Koch, accepted by Kenneth P. Silverman*, ECF No. 1044-2.

6

Trustee, and with a copy sent to KBT" and provides that "Koch's fees and expenses related to the services provided to the Trustee, including the retainer, will be paid within two weeks of the approval of a fee application submitted in the Bankruptcy Court." *Id*.

**The Trustee Consults With The UST Over**
**Retention Of Koch As Litigation Expert**

Following the execution of the Retention Letter, the Trustee drafted and submitted to the UST a proposed application to employ Koch as a "professional person" under section 327 of the Bankruptcy Code. Section 363 Motion ¶ 25. The UST advised the Trustee that it would oppose such an application on the ground that section 327 of the Bankruptcy Code does not provide for the retention of a litigation expert witness. *Id.* The Trustee did not file an application to retain Koch. However, the Trustee sought the UST's approval of alternative potential mechanisms to pay Expert Fees in the Citibank Action. *Id.* These alternatives include seeking confirmation that the UST would not object to interim fee applications submitted by KBT if KBT were to advance the Expert Fees, but no resolution with the UST was reached before Koch terminated the engagement. *Id.*

**Koch's Invoices Go Unpaid And Koch Terminates Retention Letter**

Koch submitted three invoices to KBT in connection with the engagement: (i) a retainer invoice dated August 7, 2024 in the amount of $9,500; (ii) an invoice dated September 2, 2024 in the amount of $26,679.17 for services performed in August 2024; and (iii) an invoice dated October 1, 2024 in the amount of $20,805 for services performed in September 2024.[19] KBT

---

[19] Redacted copies of the Invoices are annexed as Exhibits D through F to the Section 363 Motion. ECF Nos. 1044-4–6.

7

advanced $9,500 to Koch to pay the retainer invoice.[20] The remaining two invoices totaling $47,484.17 (the "Invoices") are unpaid. Section 363 Motion ¶ 24.

On October 1, 2024, Koch sent an email to KBT (the "Koch Email")[21] purporting to terminate the engagement. Pursuant to paragraph 6 of the Retention Letter, either party to the agreement may terminate the agreement on 30 days written notice. *Id.* The Koch Email provided that the termination notice would be withdrawn if all outstanding Invoices were paid on or before October 31, 2024. The Invoices have not been paid. *Id.*

**The Motion**

The Citibank Action is a complex legal matter that, by far, holds the largest potential recovery of any pending matter remaining in the Debtors' cases. Motion ¶¶ 1, 7. The Trustee will require the assistance of experts in order to carry his burden of proof. *Id.* ¶ 4. KBT has replaced Koch with other experts. However, at this time, the Estates do not have funds available to pay the experts' fees and expenses. *Id.* ¶ 5. The Trustee explains that to address that problem, KBT, as an accommodation, has agreed (i) to advance the reasonable fees and expenses incurred by the retained experts (the "Expert Fees"), provided that KBT may seek reimbursement of such payments from the Estates; and (ii) to adjust the contingency fee from 40% of the Recoveries, to 40% of the Net Recoveries. The latter is calculated as the difference between the Recoveries and Expert Fees paid by the Estates (the "Net Recoveries"). *See id.* ¶¶ 5-6; Reply ¶ 19.

In the Motion, the Trustee seeks to modify the KBT Retention Order (which otherwise will remain in full force and effect) to: (i) authorize KBT to advance the Expert Fees; (ii) permit KBT

---

[20] KBT intends to include the $9,500 advance to pay the Koch retainer as a disbursement in a subsequent fee application, but it is not a subject of this Motion. *See* Section 363 Motion ¶ 24, n. 2.

[21] A copy of the Koch Email is annexed as Exhibit G to the Section 363 Motion. ECF No. 1044-7.

8

to apply for reimbursement of the Expert Fees; (iii) allow KBT to seek reimbursement of Expert Fees at intervals of no more than every 120 days, to be reimbursed only when the Estates have sufficient funds; and (iv) calculate the contingency fee based on a percentage of the Net Recoveries, with no compensation or reimbursement to be paid to KBT except upon proper application under sections 327(e), 328, 330 and 331 of the Bankruptcy Code and further order of the Court. *See* Proposed Amended Order at 2.[22]

The Trustee contends that under the KBT Retention Order, the Estates, not KBT, bear the litigation costs and expenses. He says that in the Motion he "seeks a minor modification to the [KBT] Retention Order to more clearly set forth *what is already in there to begin with*." Reply ¶ 17. He maintains that it is imperative for the Court to grant the relief to ensure that KBT, on behalf of the Trustee, can retain the experts needed to prosecute the Citibank Action. Motion ¶ 7. He argues that such arrangement is in the best interest of the Estates and creditors. *Id*.

**UST's Objection To The Motion**

The UST contends that under the KBT Retention Order, KBT is responsible for paying its litigation expenses, including the Expert Fees, out of the Retainer and/or its contingency fee. UST Objection at 2, 6. He asserts that through the Motion, the Trustee seeks to circumvent the effect of the order by making the Estates liable for the payment of the Expert Fees. *Id.* at 2, 7. He argues that the Court should deny the Motion because there is no basis in fact or law for amending the terms of the KBT Retention Order. *Id.* at 2, 8.

---

[22] *[Proposed] Amended Order Authorizing the Trustee's Retention of Kasowitz Benson Torres LLP as Special Litigation Counsel to the Trustee and the Debtors' Estates*, ECF No. 1052-1 (the "Proposed Amended Order").

**ANALYSIS**

At issue herein is whether the Court should revise the KBT Retention Order to authorize KBT to advance payment of the Expert Fees and thereafter seek reimbursement of such fees from the Estates. The UST objects to that relief essentially on the grounds that the KBT Retention Order obligates KBT to pay the costs and expenses incurred in the Citibank Action out of the Retainer and/or contingency fee, and that there are no grounds for relieving KBT of that obligation. UST Objection at 6. The Court finds there is no merit to UST's contention as its position is incompatible with the language and framework of the KBT Retention Order.

First, the plain language of the KBT Retention Order establishes a framework whereby KBT may advance funds to pay litigation fees and expenses while preserving its right to seek reimbursement through proper fee applications. The KBT Retention Order establishes three separate payment categories: (i) a $150,000 retainer "to be used to pursue the Claims," (ii) a "strict contingency fee arrangement" equal to 40% of the Recoveries, and (iii) "reimbursement of expenses" through fee applications. Retention Order at 2. This framework maintains the contingency fee arrangement (including the payment of the Retainer) while providing that litigation costs and expenses, when approved by the Court, remain reimbursable from the Estates. The UST's position finds no support in the KBT Retention Order.

Second, the KBT Retention Application and the record of the May 28 Hearing confirm that the Retainer was "indefeasibly earned" by KBT and may "be used to pursue the Claims." Retention Order at 2; First Schub Decl. ¶ 3. It was not paid on account of future litigation expenses. At the hearing, the Trustee's counsel clarified that while the $150,000 would be "indefeasibly earned" upon retention as consideration for KBT taking on the case, it will be credited against any future contingency fee recovery. May 2021 Tr., 9:25-10:15. KBT confirmed that arrangement in support

10

of the Motion. *See* Second Schub Decl. ¶¶ 5-7. *See also* First Schub Decl. ¶ 3 (explaining the $150,000 retainer would be indefeasibly earned). The Retainer serves a purpose that is distinct from financing litigation expenses—it represents an initial guaranteed payment to KBT for accepting the representation, to be offset against the contingency fee. That the Retainer will be credited against any contingency fee reinforces that it was never intended to cover the Expert Fees. Indeed, if the Retainer was meant to fund those fees and other expenses as the UST suggests, it would make little sense to credit it against KBT's contingency fee compensation.

Third, the KBT Retention Order explicitly provides for "reimbursement of expenses" through proper fee applications, separate and apart from the Retainer and contingency fee provisions. KBT Retention Order at 2. This provision would serve no purpose if, as the UST suggests, KBT had agreed to cover all expenses solely from its Retainer and/or contingency fee. The Court will not adopt a construction of the KBT Retention Order that negates a key term of the order. *See In re Jamesway Corp.*, 205 B.R. 32, 35 (Bankr. S.D.N.Y. 1996) (finding when constructing the meaning of an order, "[s]uch construction should be given to [an order] as will give force and effect to every word of it . . . and make it as a whole consistent and reasonable. In applying this rule, effect must be given to that which is unavoidably and necessarily implied in [an order], as well as to that which is expressed in the most appropriate language.).

Finally, the terms of the Proposed Amended Order benefit the Estates by clarifying how KBT's contingency fee is calculated. Under the KBT Retention Order, KBT is eligible to be paid a contingency fee equal to 40% of the Recoveries—without accounting for the litigation costs and expenses. The Proposed Amended Order clarifies that the contingency fee is calculated as 40% of the Net Recoveries. By computing the contingency fee using Net Recoveries, KBT effectively

11

bears a proportional share of the Expert Fees, thereby preserving more of any recovery for the Estates' benefit.

In essence, KBT is accommodating the Estates' interests by agreeing to advance the Expert Fees while also accepting a reduced share of any eventual recovery. The Trustee confirmed as much at the February 6 Hearing, acknowledging that calculating KBT's contingency fee on Net Recoveries would be "less favorable to the retained Counsel than initially." This clarification ensures that more of any ultimate proceeds will be available for distribution to creditors, as KBT's contingency fee will now be calculated only after the Expert Fees are deducted. The Proposed Amended Order therefore provides an economic advantage to the Estates by calculating KBT's contingency fee on Net Recoveries.

In sum, the UST's position that the Retainer or contingency fee must cover the Expert Fees and expenses does not accord with the KBT Retention Order and improperly shifts the burden of expenses from the Estates to KBT. The KBT Retention Order established a framework permitting reimbursement of KBT's litigation expenses through fee applications, subject to court approval and the UST's right to object. The Proposed Amended Order clarifies this arrangement in a manner that benefits the Estates. The Court therefore rejects the UST's position.

## CONCLUSION

Accordingly, pursuant to its inherent authority[23] to interpret and clarify its prior orders, the Court grants the Motion to modify the KBT Retention in the manner, and to the extent set forth

---

[23] Although styled as a motion to amend the KBT Retention Order, the Court construes the Trustee's request as seeking clarification of how the order's existing terms operate. The KBT Retention Order already contemplated that such expenses could be reimbursed through proper fee applications under the Bankruptcy Code. *See* KBT Retention Order at 2. The Proposed Amended Order simply makes this more explicit. The Court also notes the UST does not cite to any legal authorities that shows why the Court cannot interpret and enforce its own orders. In any event, the Proposed Amended Order's terms are more favorable to the Estates than the KBT Retention Order, and the Court finds little reason not to clarify its own order.

12

herein. *See In re Residential Cap., LLC*, No. 12-12020, 2014 WL 1645350, at *7 (Bankr. S.D.N.Y. Apr. 23, 2014) ("All courts retain the jurisdiction to interpret and enforce their own orders." (internal citations omitted)). The Trustee is directed to settle an order on five business days notice to the UST and parties in interest that have appeared in these Chapter 7 Cases.

    IT IS SO ORDERED.

Dated: February 12, 2025
       New York, New York

                              /s/ *James L. Garrity, Jr.*
                              Honorable James L. Garrity, Jr.
                              United States Bankruptcy Judge